UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CARUSO GLYNN, LLC,

                                                                                       Case No.: 11 Civ. 4360 (VB)

              Plaintiff,

     -against-

SAI TRUST and ROBERT MEMBRENO,
Individually and as Trustee for SAI TRUST,

             Defendants.
----------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF A DEFAULT JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

CARUSO GLYNN, LLC
Attorney for Plaintiff
Caruso Glynn, LLC
36 PECK SLIP
NEW YORK, NEW YORK 10038
TELEPHONE: (718) 570-3338
FACSIMILE: (718) 767-2474
e-mail to lglynn@carusoglynn.com
www.carusoglynn.com

**PRELIMINARY STATEMENT**

Plaintiff Caruso Glynn, LLC (hereafter, "Caruso Glynn" or "Plaintiff") submits this Reply Memorandum of Law in further support of its motion pursuant to Fed. R. Civ. P. 55(b)(2) for the entry of a default judgment against defendant SAI Trust (hereafter "SAI" or "Defendant") on the ground that after having been duly served with a copy of the Summons and Complaint in this matter, Defendant has failed to plead or otherwise move in this action. This memorandum of law is also submitted in opposition to defendants' cross-motion to dismiss.

**ARGUMENT**

**Point I**

**Defendants Were Properly Served and Their Arguments
to the Contrary Are Without Merit**

Defendants' reading of the case it cites in support of its position vis-a-vis service upon a trustee is incoherent. *Citibank v. Kollen* 162 Misc.2d. 883, 618 N.Y.S.2d 993 (N.Y. Sup. Ct., 1994), the key case relied upon by defendants, clearly holds that "[i]f an individual holds the position of trustee, the trustee may be served pursuant to CPLR §308." And see *MLG Capital Assets, LLC v. Judith Eikland Trust*, 283 A.D.2d 619, 620-621, 725 N.Y.S.2d 664 (2d Dept. 2001)("service upon the trust by service on Walter Eikland, as the Trust's accountant and father of one of the trustees, was proper substitute service pursuant to CPLR 308(2)").

Here, Robert Membreno is a trustee for SAI Trust. The affidavit of service demonstrates that proper, substituted service upon an individual of suitable age and discretion (Marc Membreno, Vice

President of SAI Trust) was made in accordance with CPLR §308. Marc Membreno is a person of suitable age and discretion at the place of business of SAI Trust. The affidavit of service establishes *prima facie* that the summons and complaint were delivered to Marc Membreno, and defendants have not come forth with any evidence to rebut this prima facie showing.

In fact, this matter is directly on point with *Citibank* and *MLG* and service here, as in both of those cases, was properly effectuated. In both cases, the person served was the father of one of the trustees and both persons served acted as the respective trust's accountant. Here, the person served, Marc Membreno, is the son of the trustee Robert Membreno and served as the Vice President of the trust. Thus, it is difficult to understand any basis for defendant's motion to dismiss for lack of proper service.

Defendants even concede that substituted service is proper with respect to the trustee, but argue, without any support at all, that under CPLR 308(2), such service is only valid if it is "within the state." Nevertheless, CPLR §313 provides for service "without the state" in the same manner as service made within the state. Defendants cannot seriously contend that CPLR §313 is inapplicable when the person to be served outside of the state is a trustee. In any event, *Citibank v. Kollen* answers this question by permitting substituted service upon a trustee through a person of suitable age and discretion. Defendants now seek to impose the same "absurd" results that the court in *Citibank* clearly addressed and resolved.

Accordingly, substituted service on Robert Membreno was effectuated in accordance with CPLR §§308(2) and 313 and, therefore, proper service upon SAI Trust was likewise effected.

## Point II

### Plaintiff May Properly Claim Damages Either for Breach
### of the Original Agreement or for Breach of the Accord

Defendants continue to ignore that there was a valid contingency fee agreement which they breached and upon which plaintiff now seeks relief. See Reply Affirmation of Lawrence C. Glynn in further support of plaintiff's motion for default and in opposition to Defendants' Motion to Dismiss ("Glynn Reply Aff.") ¶3. Defendants never objected to this contingency fee until some two months later and only after two invoices confirming the fee arrangement had been sent. Glynn Reply Aff. ¶4. Despite the existence of a valid, enforceable contingency agreement supported by two subsequent invoices confirming said agreement, plaintiff generously accommodated this client by agreeing to modify the original agreement to reflect hourly billing. Glynn Reply Aff. ¶5. The consideration for this modification was that defendants would, in fact, pay the hourly rate for all services. Glynn Reply Aff. ¶6. Defendants decided that they were not going to honor this modified agreement either, refusing to pay plaintiff for services rendered on a time basis. Having thus breached the modified agreement to pay at an hourly rate, after having breached the original contingency fee agreement, plaintiff is rightfully entitled to enforce the original contingency fee agreement and defendants are obligated to now pay the contingency fee. Glynn Reply Aff. ¶7.

Defendants point to, and badly misinterpret, the previous attempt to arbitrate in accordance with Part 137 of the Rules of the Chief administrator of the Courts. The subsequent accommodation made by plaintiff to allow defendants to pay on an hourly basis was an accord which defendants also breached. "A party claiming breach of an executory accord can claim damages either for breach of the original agreement or for breach of the accord, but not for both. *Smith v. Positive Productions*,

419 F.Supp.2d 437, 450 (S.D.N.Y. 2005), *and see* N.Y. Gen. Oblig. L. § 15-501(3) ("if an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, [or] obligation ... which is the subject of the accord, or to assert his right under the accord"); *see also Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1078-79 (2d Cir.1993).

Plaintiff quite generously sought previously to only enforce the modified agreement requiring defendants to pay for all services on an hourly basis. However, defendants defaulted on the demand for fee arbitration requiring plaintiff to bring suit in Queens Civil Court in that action. Glynn Reply Aff. ¶9 and Exhibit A thereto. Defendants then defaulted in answering that complaint and only after a motion for default was brought in that court did the defendants move to dismiss the complaint alleging that any claim had to be arbitrated (ignoring their own failure to timely respond to the demand for arbitration). Glynn Reply Aff. ¶10. Since entering into a stipulation to arbitrate that matter on April 4, 2011, defendants have once again failed to submit to arbitration as promised in that stipulation. Glynn Reply Aff. ¶11. Plaintiff is now abandoning any attempts to collect on an hourly basis, i.e., the accord (as such efforts have proven fruitless), and is instead seeking in this action to enforce the original agreement as is its right under New York's General Obligation Law. In other words, plaintiff is no longer willing to afford generosity to these recidivists.

Further, as the amount owed under the original contingency fee agreement exceeds $50,000.00, this matter does not fall under the purview of Part 137 of the Rules of the Chief administrator of the Courts and is thus not arbitrable. Suit in this court is properly brought.

Defendants further ignore plaintiff's mitigation efforts in seeking to enforce the terms of the modified agreement. "Under New York law, an injured party will be allowed to recover the expense

of a proper effort to [mitigate damages] even though it proves unsuccessful." *Smith v. Positive Productions*, 419 F.Supp.2d 437, 449 (S.D.N.Y. 2005) citing *Baker v. Dorfman* 239 F.3d 415, 427 (2d. Cir. 2000), quoting *Den Norske Amriekalinje Actiesselskabet v. Sun Printing & Publ'g Ass'n*, 226 N.Y. 1, 122 N.E. 463, 465 (1919). A detailed itemization of plaintiff's mitigation efforts are set forth in Glynn Reply Aff. and total $9,464.20. Thus, to the extent that plaintiff's previous generosity in seeking to only enforce the accord has proven fruitless, these efforts were nonetheless reasonable and plaintiff will be entitled to recover from defendants the amount of these mitigation efforts.

**Point III**

**Defendants Have Failed to Provide Evidence That They Objected to the Contingency Fee Agreement Within a Reasonable Time and Have Failed to Contest the Legitimacy and Reasonableness of Plaintiff's Reasonable Contingency Fee**

Under New York law, which governs the agreement between SAI and Caruso Glynn, LLC, the elements for account stated are the rendering of an account and the failure of the responsible party to object within a reasonable period of time. *Bonamassa v. Estate of Bakos*, 30 Misc.3d 1218(A) (Queens Sup. Ct., Feb. 4, 2011) citing *Ernest Edward Badway Encyclopedia of New York Causes of Action: Elements and Defenses*, §5-2 at 37-38 [2nd ed. 2010 New York Law Journal Practice Series]; *Nebraskaland Inc. v. Best Selections*, 303 A.D.2d 662 (2nd Dep't 2003); *Bay Ridge Lumber Co., Inc. v. Summit Renovation Corp.*, 271 A.D.2d 559 (2nd Dep't 2000).

In New York, a lawyer may assert a cause of action for account stated against a client "with proof that a bill, even if unitemized, was issued to a client and held by the client without objection for an unreasonable period of time. It is not necessary to establish the reasonableness of the fee since the client's act of holding the statement without objection will be construed as acquiescence as to its correctness." *O'Connell & Aronowitz v. Gullo*, 644 N.Y.S.2d 870, 871 (3d Dep't 1996) (citations

5

omitted), *appeal denied*, 89 N.Y.2d 803 (1996). Significantly, an account stated will be enforced regardless of whether there was an initial retainer agreement between the attorney and client. *See, e.g., Ellenbogen & Goldstein, P.C. v. Brandes*, 641 N.Y.S.2d 28, 29 (1st Dep't 1996), *appeal denied*, 89 N.Y.2d 806 (1997).

Defendants' reliance upon *Nebi v. Sells* 70 A.D.3d 252, 892 N.Y.S.2d 41 (1st Dept. 2009) is completely misplaced as that case dealt with a fee agreement between attorney and client *after* termination of the relationship. Here, defendants never terminated plaintiff but instead surreptitiously negotiated a settlement agreement with Calpine without plaintiff's knowledge specifically to thwart plaintiff's entitlement to the agreed upon contingency fee.

In fact, *Nebi v. Sells* only supports plaintiff's claim for its reasonable contingency fee. "Against the client's unqualified right to terminate the attorney-client relationship is balanced the notion that a client should not be unjustly enriched at the attorney's expense or take undue advantage of the attorney, and therefore the attorney is entitled to recover the reasonable value of services rendered. *Id.* at 254, citing *Matter of Cooperman*, 83 N.Y.2d 465, 473–474, 611 N.Y.S.2d 465, 633 N.E.2d 1069 [1994]; *Demov, Morris, Levin & Shein*, 53 N.Y.2d at 558, 444 N.Y.S.2d 55, 428 N.E.2d 387; *Matter of Krooks*, 257 N.Y. at 332–333, 178 N.E. 548). Further, even had defendants actually discharged plaintiff, which they had not, then under such a scenario, "[a]lthough the annulled contingency fee agreement no longer governs the parties' relationship, it may "be taken into consideration as a guide for ascertaining *quantum meruit*" (*Matter of Tillman*, 259 N.Y. 133, 135, 181 N.E. 75 [1932] ), in addition to such pertinent factors as "'the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality'" (*Schneider, Kleinick, Weitz,*

*Damashek & Shoot*, 302 A.D.2d at 188–189, 754 N.Y.S.2d 220 [quoting *Smith,* 192 A.D.2d at 951, 596 N.Y.S.2d 575] ). *Id.* at 44.

      The underlying litigation was part of one of the largest bankruptcies in this nation's history with more than 8,000 docket entries. SAI's claims in that matter were virtually worthless at the time plaintiff took over the handling of the matter. Plaintiff successfully litigated the claim to its final settlement value of in excess of $1,000,000.00 which required appeals to the Southern District and the Second Circuit. The records on appeal were approximately 5,000 pages consisting of, *inter alia*, detailed monthly financial statements, spreadsheets, calculations and a plethora of complex legal issues. SAI cannot seriously dispute the astonishing level of success brought about by plaintiff's tireless efforts against Calpine and its counsel, Kirkland Ellis, in resurrecting its claims. SAI also cannot dispute the level of risk taken on by plaintiff who was willing to, and did, work on the matter on a contingency fee basis despite the uncertainty of a Second Circuit appeal and the possibility of having to start from scratch before the United States Bankruptcy Court for the Southern District of New York had the Second Circuit reversed Judge Marrero's decision. Further, SAI certainly cannot argue that a 22.5% contingency fee is anything but reasonable, especially when firms typically charge 33 and even 40%. Finally, the use of a contingency fee was especially fair to both SAI and Calpine (who Judge Marrero ruled was ultimately responsible to pay SAI's reasonable attorney's fees) as it gave all parties some sense of finality as to the amount of legal fees that would be paid, for had the matter dragged on for years on a time basis (a very plausible scenario given the history between the parties and the nature of the litigation), the amount of legal fees calculated on a hourly basis would easily have dwarfed the amount SAI and Calpine would have to pay on a contingency fee basis.

Most importantly, SAI and Mr. Membreno are simply unable to contend, much less support with competent evidence, that they objected within a reasonable time to plaintiff's invoices and that plaintiff is not entitled to its reasonable contingency fee.

> The law is well settled that to defeat a motion for summary judgment on an account stated cause of action for legal fees, defendant client must make a sufficient evidentiary showing that he objected within a reasonable time to the invoices he received from plaintiff, and self-serving, bald, conclusory and unsubstantiated allegations of oral protests or objections do not satisfy this standard. See *Darby v. Darby. PC v. VSI International. Inc.*, 95 NY2d 308, 315 (2000); *Kramer Levin Naftalis & Frankel LLP v. Canal Jean Co. Inc.*, 73 AD3d 604 (1st Dept 2010); *Duane Morris LLP v. Astor Holdings Inc.,* 61 A.D.3d. 418 (1st Dept 2009) *supra*: *Miller v. Nadler*, 60 AD3d 499 (1st Dept 2009); *Zanani v. Schvimmer* 50 AD3d 445 (1st Dept 2008); *Levisohn Lemer Bereer & Langsam v. Gottlieb*, 309 AD2d 668 (1st Dept 2003), *appeal denied,* 1 N.Y.3d 509 (2004); *Morrison Cohen Singer & Weinstein LLP v. Ackerman,* 208 A.D.2d. 355 (1st Dept 2001); *Ruskin. Moscou. Evans & Faltishek. P.C. v. FGH Realty Credit Corp.*, 228 A.D.2d. 294 (1st Dept 1996); *Fink Weinberger Fredman, Berman & Lowell. P.C. v. Petrides*, 80 A.D.2d. 781 (1st Dept 1981), *app dism* 53 NY2d 1028 (1981). As the court previously determined, defendant's conclusory and unsubstantiated allegations that he objected to and complained about plaintiffs services and fees, are insufficient to raise a triable issue as to whether he in fact disputed plaintiffs statement of account.

*Morrison Cohen LLP v. Karl M. Parrish*, 2011 N.Y. Slip Op. 30354 (N.Y. Sup. Ct., Feb. 9, 2011)

Here, as expected, SAI has offered nothing more than precisely the types of self-serving, bald, conclusory and unsubstantiated allegation to demonstrate a meritorious claim. Notably, defendants have chosen not to adequately respond to the motion for default nor set forth good cause for why the default should be vacated. Defendants have not set forth any evidence that their default was not willful, that plaintiff will not be prejudiced by this default (especially in light of defendants' repeated prior defaults in an attempt to thwart plaintiff's proper collection efforts), nor have they set forth any meritorious defense to the underlying action, save for the precise types of bald, conclusory assertions which have been uniformly rejected in such cases.

Importantly, defendants have completely failed to respond to any portion of the motion seeking default on plaintiff's request for declaratory judgment vis-à-vis an award of attorney's fees in the amount of 22.5% of the amount of monthly Allocated Expenses and 15% of overhead for each month that SAI is not charged Allocated Expenses and 15% overhead from June 2011 through and until May, 2017 when the underlying 1987 agreement expires. Here too, SAI has been and will continue to receive a monthly windfall due entirely to plaintiff's efforts in finally getting Calpine to comply with its obligations under said agreement, without compensating plaintiff for its efforts in procuring same. See Affirmation of Lawrence C. Glynn in Support of Motion for Default ("Glynn Aff."), ¶¶10-11.

## CONCLUSION

Based upon the foregoing, plaintiff seeks an Order pursuant to Fed. R. Civ. P. 55(b)(2) for the entry of a default judgment against defendant SAI Trust in the amount of $270,026.77 plus interest from the date of the Order accruing at the rate of 9% per annum, interest through the return date of this motion totaling $38,285.01 calculated as follows [($231,741.76 x .09)/365 days] x 670 days = $38,285.01 ($57.14 per day), declaratory relief awarding attorney's fees in the amount of 22.5% of the amount of monthly Allocated Expenses for each month that SAI is not charged Allocated Expenses and 15% overhead from June 2011 through and until  May, 2017 when the underlying agreement expires, plaintiff's mitigation damages, including this motion for default, totaling $9,464.20, and for such other and further relief that this Court deems just and proper.

Dated: New York, New York
       December 26, 2011

Respectfully submitted,

**Caruso Glynn, LLC**
Attorneys for Plaintiff

By: /s/ *Lawrence C. Glynn*
Lawrence C. Glynn (LG-6431)
36 Peck Slip
New York, New York 10038
(718) 570-3338
File No.: 88.071108.01