UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARUSO GLYNN, LLC<br><br>                    Plaintiff,<br><br>    -Against-<br><br>SAI TRUST and ROBERT MEMBRENO,<br>Individually and as Trustee for SAI TRUST,<br><br><br>                    Defendants. | Civil Action No.: 7:11-cv-4360 (VB)<br>ECF CASE |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR STAY THIS ACTION

### PRELIMINARY STATEMENT

Defendants, SAI TRUST (hereinafter "SAI") and ROBERT MEMBREÑO, submit this reply memorandum of law in further support of their cross motion to dismiss the complaint for lack of jurisdiction, due to the plaintiff's failure to properly serve the complaint, and for a failure to state a cause of action.  The plaintiff tries to walk back from its false allegation that SAI is a corporation, now claiming that its attempted service satisfies the requirements for substituted service on an individual.  It also improperly seeks to shift the burden to move forward with the attorney fee arbitration to the defendants, even though it is the claimant seeking to recover fees.  Finally, the plaintiff's opposition/reply papers confirm that the SAI never communicated any consent to the plaintiff's proposal for a contingency fee, and that the plaintiff elected its remedy upon discharge for an hourly fee.  Accordingly, this action must be dismissed.

## ARGUMENT

### POINT I

### THE PLAINTIFF HAS NOT DEMONSTRATED
### PROPER SUBSTITUTED SERVICE

Despite filing it affidavit of service and arguing in its original papers that it had served SAI under Section 311 of the New York C.P.L.R., based upon the false assertion that SAI was a corporation, the plaintiff now claims that it has properly performed substituted service under C.P.L.R. Sections 308(2) and 313.  However, the affidavit of service on which the plaintiff relies gives no indication that service was performed in accordance with Section 308(2).  The Court may not assume the service so complied simply based upon counsel's suggestion, especially where the process server was attempting to serve a corporation rather than an individual.

As the defendants acknowledge in their moving papers, substituted service upon an individual trustee is permitted under C.P.L.R. § 308(2).  However, the plaintiff has not shown that its process server complied with the requirements for substituted service, notwithstanding its conclusory and belated claims.  Subsection (2) requires not only that service be made upon an individual of proper age at the residence of actual place of business of the person to be served, but that another copy be mailed "by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served".  Section 308 requires strict compliance with its provisions in order for service to be effective.

> Service of process is carefully prescribed by the Legislature, which affords
> litigants ample methods for serving natural persons. Regularity of process,
> certainty and reliability for all litigants and for the courts are highly desirable
> objectives to avoid generating collateral disputes.  These objectives are served by

adherence to the statute and disserved by judicially engrafted exceptions to CPLR 308(1) (CPLR 308(2)).

Dorfman v. Leidner, 565 N.E.2d 472, 474 (N.Y. 1990).  Failure to comply with any of the requirements of the statute reflects improper service and precludes the court from exercising jurisdiction over the defendant.  Id.; see, also, Pesner v. Fried, 560 N.Y.S.2d 795 (App. Div. 2d Dep't 1990) (dismissing action where the plaintiff had failed to comply with all the formalities for the sending of the copy of the summons and complaint by first class mail).

The plaintiff cannot demonstrate compliance with each provision of Section 308(2). First, the process server did not leave a copy of the summons and complaint with a person of suitable age and discretion.  When the server tried to serve Marc Membreño, Marc informed the server that he was not authorized to accept service on behalf of Robert.  Without informing Marc, the server apparently left a set of papers on a chair at Marc's office as he left.  (M. Membreño Moving Decl. ¶ 3).[1]  Although a process server may leave a copy of service papers with a person who refuses to accept, the server must "inform[] the person to whom delivery is being made that this is being done".  Bossul v. Steinberg, 447 N.E.2d 56, 58 (N.Y. 1983).  A process server cannot satisfy this obligation to inform the person being served by surreptitiously leaving a copy in the defendant's vicinity,   Kapsis v. Green, 727 N.Y.S.2d 895 (App. Div. 2d Dep't 2001), or on a chair in the person's office, Coyne v. Besser, 546 N.Y.S.2d 129, 130 (App. Div. 2d Dep't 1989).   Second, service was not attempted at Robert Membreño's residence or place of business, as Robert Membreño no longer resides in California, but resides and works in Nicaragua. Third, and in this same vein, the plaintiff cannot show mailing to the defendant's residence or place of business, as both are in Nicaragua.  Moreover, nothing in the affidavit of

---

[1]As set out in the defendants' moving Memorandum, the Court should resolve any doubt posed by conflicting accounts of service in favor of the defendants.  American Inst. of Cert. Public Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375-76 (S.D.N.Y. 1998).

3

service certifies mailing in compliance with the statute.  The affidavit is signed by the process

server from California, named Zac Sweigart, and contains on one of the pages a notation below

the signature that "[m]ailing was done on 9/6/2011 via service agency in NY".  Mr. Sweigart, the

affiant, does not state that he performed the mailing, and no other individual's affidavit has been

filed by the plaintiff to demonstrate mailing.

Prior to the filing of its opposition to the defendants' motion to dismiss, the plaintiff had

specifically disclaimed that it had effected substituted service upon either defendant under CPLR

§ 308(2).  The plaintiff was specifically asked in October of this year for evidence of its

compliance with the substituted service requirements of either California or New York law.

Plaintiff's reply was "How do you figure substituted service?  Service on a corporation.  CPLR

§311".  (Sullivan Moving Decl. Exh. 3).  This statement was consistent with what plaintiff

apparently indicated when it filed the purported affidavit of service on September 23, 2011,

falsely identifying Marc Membreño as a "Vice President" and stating that Marc "accepted"

service.  One is left to wonder how one individual can be the vice president of another

individual.

## POINT II

## THE PLAINTIFF CANNOT AVOID ARBITRATION

The plaintiff attempts to dismiss its agreement to arbitrate the fee dispute with the

defendants by essentially claiming to have changed its mind.  The plaintiff cites to a letter it

wrote to the Office of Court Administration in Queens in July 2010, complaining that the

defendants had not submitted a timely request for fee arbitration.  (Plaintiff's Reply Decl. Exh.

A).  This document is entirely meaningless, however, because the agreement to arbitrate was

signed in April 2011, more than 8 months later.  It is the stipulation of settlement dated April 4,

2011 (R. Membreño Decl. Exh. 2), that establishes the plaintiff's obligation to arbitrate.  The

plaintiff then conclusorily states that the defendants "have once again failed to submit to

arbitration", when it is the plaintiff as the party seeking reimbursement that would have the

responsibility to pursue its recovery through the arbitration process.  Instead, the plaintiff

commenced this suit within three months of agreeing to arbitrate.

### POINT III

### THE PLAINTIFF COULD NOT UNILATERALLY IMPOSE A CONTINGENCY FEE ARRANGEMENT WITHOUT THE AGREEMENT OF THE DEFENDANTS

As set out in detail in the defendants' moving papers, an attorney cannot impose a

contingency fee arrangement on a client without the client's agreement.  Nabi v. Sells, 892

N.Y.S.2d 41, 43-44 (App. Div. 1st Dep't 2009).   Nothing in the plaintiff's complaint or its

opposition papers establishes that the defendants ever agreed to counsel's mere proposal that it

represent SAI under a new fee arrangement.  The absence of any such evidence is particularly

glaring where the plaintiff's October 8, 2009, e-mail to SAI merely "propose[d]" a contingency

fee arrangement and asked that the SAI "confirm your agreement to these terms".  (Complaint

Exh. B).  Because SAI never confirmed its agreement, the proposal remained nothing but a

proposal.  The plaintiff has not cited to a single case to support its apparent position that a client

can agree to an attorney's contingency fee proposal by way of silence.  The plaintiff's inability to

cite to any case so holding is not surprising given that "an agreement for a contingent fee can

never be implied but must be a matter expressly contracted for between the attorney and the

client".  De Graff v. McKesson & Robbins, Inc., 292 N.E.2d 310, 315 (N.Y. 1972).

Even if SAI had at some point agreed to a contingency fee agreement, "it is well settled

that the client may terminate the contingent fee agreement at any time, leaving the lawyer no

cause of action for breach of contract, only *quantum meruit*". <u>King v. Fox</u>, 851 N.E.2d 1184, 1191-92 (N.Y. 2006) (citations omitted). "Only if the client and attorney agree may the attorney receive a fee based on a percentage of the recovery." <u>Cohen v. Grainger, Tesoriero & Bell</u>, 622 N.E.2d 288, 290 (N.Y. 1993). The plaintiff cannot not dispute that in December 2009 SAI advised it that it did not want to proceed under a contingency fee arrangement, as the plaintiff has already admitted so under oath. Under New York law, SAI had an absolute right to reject the contingency fee arrangement, which it did within two months of the plaintiff's proposal, without ever having accepted the proposal. Accordingly, all causes of action arising from breach of contract, including the account stated, must be dismissed. <u>King</u>, 851 N.E.2d at 1191-92; <u>Fariello v. Checkmate Holdings, LLC</u>, 918 N.Y.S.2d 408, 409 (App. Div. 1st Dep't 2011). This rejection of the plaintiff's proposal occurred well in advance of SAI's agreement in March 2010 to settle its claims with Calpine. (Complaint ¶ 10).

In a dispute with its client, an attorney may only claim *quantum meruit*, assuming the attorney has been discharged without cause. If the discharge is for cause (which SAI intends to show in arbitration), the attorney may not even recovery *quantum meruit*. <u>Budin, Reisman, Kupferberg & Bernstein, LLP v. Law Offices of Rosemarie Arnold</u>, 79 Fed. App. 460, 461 (2d Cir. 2003); <u>Schwartz v. Tenenbaum</u>, 182 N.Y.S.2d 51, 53 ((App. Div. 2d Dep't 1959). The attorney may elect a contingency fee only as against a subsequent attorney that the client may retain. <u>Cohen</u>, 622 N.E.2d at 289-90; <u>Nobi</u>, 892 N.Y.S.2d at 44. To the extent that the plaintiff can even be deemed to have any right to elect how its fee is computed, its election in 2010 to seek a fee on an hourly basis precludes any subsequent attempt to obtain a contingency fee. Accordingly, the causes of action for breach of contract, account stated, and declaratory judgment must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the plaintiff must be dismissed and/or stayed pending arbitration.

Respectfully submitted,

Dated: New York, New York
          December 27, 2011

HILL RIVKINS LLP
Attorneys for Defendants

By: _____
          John J. Sullivan
          45 Broadway – Suite 1500
          New York, New York 10006
          212-669-0600