HILL RIVKINS LLP
45 Broadway – Suite 1500
New York, NY 10006
Telephone: 212-669-0600
Facsimile: 212-669-0698
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CARUSO GLYNN, LLC<br><br>Plaintiff,<br><br>-Against-<br><br>SAI TRUST and ROBERT MEMBRENO, Individually and as Trustee for SAI TRUST,<br><br>Defendants. | Civil Action No.: 7:11-cv-4360 (VB)<br>ECF CASE<br><br><br>**ANSWER WITH COUNTERCLAIM** |

Defendants herein, SAI TRUST and ROBERT MEMBREÑO, Individually and as Trustee for SAI TRUST, through their attorneys HILL RIVKINS LLP, hereby answer the complaint of the Plaintiff, CARUSO GLYNN LLC, and interpose their counterclaim upon information and belief as follows:

1.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2.    Admit that SAI TRUST has an office address at 2072-B Walsh Avenue, Santa Clara, CA 95050, but otherwise deny the remaining allegations of paragraph 2 of the Complaint.

3.      Admit that SAI TRUST has an office address at 2072-B Walsh Avenue, Santa Clara, CA 95050, but otherwise deny the remaining allegations of paragraph 3 of the Complaint.

4.      Deny the allegations of paragraph 4 of the complaint, but otherwise aver that Mr. Membreño is a resident of Nicaragua.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6.      Deny that the plaintiff is entitled to recover any attorneys' fees from the defendants, but otherwise deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6 of the complaint.

7.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8.      Deny the allegations of paragraph 8 of the complaint.

9.      Deny the allegations of paragraph 9 of the complaint.

10.     Admit that SAI TRUST and Calpine Corp. entered into a settlement agreement in or about March 2010, but otherwise deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 of the complaint.

11.     Deny the allegations of paragraph 11 of the complaint.

12.     Deny the allegations of paragraph 12 of the complaint.

13.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14.     Deny the allegations of paragraph 14 of the complaint.

**AS AND FOR AN ANSWER TO THE FIRST CAUSE OF ACTION**

15.　　Deny the allegations of paragraph 15 of the complaint.

16.　　Deny the allegations of paragraph 16 of the complaint.

17.　　Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.　　Deny the allegations of paragraph 18 of the complaint.

19.　　Admit that the settlement agreement referred to in paragraph 10 of the complaint provided in part for the transfer of 48,863 shares of Calpine to a designee of SAI TRUST, but otherwise deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19 of the complaint.

20.　　Admit the allegations of paragraph 20 of the complaint.

21.　　Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.　　Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.　　Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.　　Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.　　Deny the allegations of paragraph 25 of the complaint.

26.　　Deny the allegations of paragraph 26 of the complaint.

27.　　Deny the allegations of paragraph 27 of the complaint.

**AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION**

28.     Defendants repeat their responses to paragraphs 1 through 27 of the complaint as if fully set forth herein.

29.     Admit that the plaintiff sent the defendants an invoice on or about November 2, 2009, but deny the remaining allegations of paragraph 29 of the complaint.

30.     Deny the allegations of paragraph 30 of the complaint.

31.     Deny the allegations of paragraph 31 of the complaint.

32.     Deny the allegations of paragraph 32 of the complaint.

33.     Deny the allegations of paragraph 33 of the complaint.

**AS AND FOR AN ANSWER TO THE THIRD CAUSE OF ACTION**

34.     Defendants repeat their responses to paragraphs 1 through 33 of the complaint as if fully set forth herein.

35.     Deny the allegations of paragraph 35 of the complaint.

**AS AND FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION**

36.     Defendants repeat their responses to paragraphs 1 through 35 of the complaint as if fully set forth herein.

37.     Admit the allegations of paragraph 37 of the complaint.

38.     Deny the allegations of paragraph 38 of the complaint.

39.     Deny the allegations of paragraph 39 of the complaint.

40.     Deny the allegations of paragraph 40 of the complaint.

**AS AND FOR AN ANSWER TO THE FIFTH CAUSE OF ACTION**

41.     Defendants repeat their responses to paragraphs 1 through 40 of the complaint as if fully set forth herein.

42.     Deny the allegations of paragraph 40 of the complaint.

43.     Deny that the plaintiff is entitled to any declaratory relief in this matter,
including that it is entitled to payment of any additional legal fees from the defendants.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

44.     The Complaint fails to state a cause of action upon which relief can be
granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

45.     The instant action is barred by the applicable statute of limitation and/or
laches.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

46.     Plaintiff is estopped from asserting the claims put forth herein.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

47.     The plaintiff waived the right to receive any compensation claimed in this
matter.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

48.     The plaintiff does not have the legal capacity to maintain this action.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

49.     The cause of action may not be maintained because of arbitration and
award and/or collateral estoppel.

### AS AND FOR A COUNTERCLAIM

50.     Defendants repeat and incorporate their responses and averments in
Paragraphs 1 through 49 as if fully set forth herein.

51.     SAI TRUST filed suit against Calpine Corp. in California state court to
recover various sums of money wrongfully withheld by Calpine from SAI TRUST.

52.     Calpine Corp. subsequently filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code, requiring SAI TRUST to pursue its claims before the Bankruptcy Court of the Southern District of New York.

53.     ROBERT MEMBREÑO, as trustee of SAI TRUST, retained the law firm of Nicoletti Hornig & Sweeney ("NHS") to represent it before the Bankruptcy Court. One of the attorneys from NHS that worked on SAI TRUST's claim was associate Lawrence C. Glynn.

54.     On or about June 9, 2009, while NHS was counsel of record, Judge Victor Marrero, United States District Court, issued a decision and order reversing the Bankruptcy Court's denial of SAI TRUST's claims against Calpine Corp.

55.     Thereafter, NHS engaged in settlement discussions with counsel for Calpine.

56.     On October 7, 2009, Mr. Glynn resigned from NHS.

57.     On October 8, 2009, Mr. Glynn advised the defendants by e-mail that he was resigning from NHS to start his own law firm, the plaintiff herein, and that he could continue to represent SAI TRUST in the litigation against Calpine.

58.     In his October 8, 2009, e-mail to the defendants Mr. Glynn wrote in pertinent part that "I propose that going forward, I will continue to handle this matter on a contingency fee basis".   In the same e-mail, Mr. Glynn also wrote in pertinent part that "[i]f you would prefer to stay with a time basis, please advise.  However, please note that my fee in this matter has increased from $260.00 to $320.00 per hour.

59.     Neither SAI TRUST nor Robert Membreño ever expressed any agreement or consent to the proposal of the plaintiff and/or Mr. Glynn to a contingency fee.

60.     Neither SAI TRUST nor Robert Membreño ever signed a retainer agreement with the plaintiff and/or Mr. Glynn.

61.     On October 20, 2009, Mr. Marc Membreño, acting on behalf of SAI TRUST and Robert Membreño, wrote to the plaintiff via e-mail with questions regarding how the plaintiff's contingency fee proposal would work, and requesting confirmation that the alternative was for the plaintiff to continue as counsel for SAI TRUST on an hourly basis, but at an increased rate.

62.     Despite neither SAI TRUST nor Mr. Membreño ever having agreed to a contingency fee, the plaintiff submitted an invoice and/or invoices to the defendants purporting to waive an hourly fee in favor of a contingency fee.

63.     On December 11, 2009, Marc Membreño, acting on behalf of Robert Membreño, wrote to the plaintiff via e-mail to inform the plaintiff that Robert would "not accept payment of a contingency fee.  The agreement between Caruso Glynn and SAI Trust was for payment on a time basis (as with all previous firms in the case), and to change to a different methodology is unacceptable 'because it changes the professional contractual relationship between the parties'," and that "[f]or the settlement, Robert stated SAIT will pay all current invoices due, and agree to add a $10,000 performance bonus".

64.     On December 11, 2009, the plaintiff replied via e-mail that it "will nevertheless acquiesce and agree to remain on a time basis".  The plaintiff also wrote, "please inquire with Robert if he will consider increasing the performance bonus to $25,000.  Please also advise Robert that in the event of a settlement, any amount that

Calpine does agree to pay above $850,000.00 will be exclusively for the account of Caruso Glynn, LLC as attorney's [sic] fees which Calpine must pay . . ."

65.     On or about October 8, 2009, the plaintiff improperly sent the defendants an invoice for hourly time spent in the amount of $6,752, even though all time Mr. Glynn spent working on the defendants' case through that date was as an associate for NHS.

66.     After the defendants instructed and the plaintiff agreed that the plaintiff was representing SAI TRUST on an hourly basis, the plaintiff sent the defendants an additional invoice dated November 2, 2009, for hourly legal fees in the amount of $4,768. That invoice improperly included $2,176 in legal fees covering 6.8 hours worth of time while Mr. Glynn was still employed as an associate with NHS.

67.     On or about January 19, 2010, SAI received a letter and final invoice from NHS in the amount of $5,148 for fees and disbursements covering the period Sept. 1, 2009, through October 5, 2009, listing work performed by Mr. Glynn as an attorney for NHS.  The defendants paid the full amount of NHS's final invoice.

68.     The defendants discharged the plaintiff for cause on or about February 5, 2010.

69.     The defendants were compelled to retain separate counsel to negotiate a settlement with Calpine Corp.

70.     The plaintiff eventually submitted time bills to the defendants totaling $35,688 in fees and disbursements of $149.

71.     The plaintiff's time invoices improperly included time entries and demands for payment covering time spent while Mr. Glynn was still employed by NHS

and for time spent trying to convince the defendants to accede to the plaintiff's proposal for a contingency fee.

72.     The plaintiff could properly have billed the defendants no more than the sum of $24,701 in fees and disbursements.

73.     The plaintiff improperly and unreasonably overbilled the defendants by the sum of no less than $10,987 in hourly fees.

74.     The defendants paid the sum of $32,885.16 to the plaintiff for his legal fees and disbursements and are entitled to a refund of improperly overbilled fees in the amount of $8,184.16.

**WHEREFORE**, Defendants SAI TRUST and Robert Membreño respectfully pray as follows:

1.     For judgment dismissing the Plaintiff's Complaint with prejudice;

2.     For judgment on their Counterclaim in the amount of $8,184.16;

3.     For interest, all costs of suit, and reasonable attorneys' fees;

4.     For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
        January 8, 2013

HILL RIVKINS LLP
Attorneys for Defendants

By: _____
        John J. Sullivan
        45 Broadway – Suite 1500
        New York, New York 10006
        212-669-0600