HILL RIVKINS LLP
45 Broadway – Suite 1500
New York, NY 10006
Telephone: 212-669-0600
Facsimile: 212-669-0698
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARUSO GLYNN, LLC<br><br>                Plaintiff,<br><br>-Against-<br><br>SAI TRUST and ROBERT MEMBRENO, Individually and as Trustee for SAI TRUST,<br><br>                Defendants. | Civil Action No.: 7:11-cv-4360 (VB)<br>ECF CASE<br><br><br><br>**DECLARATION OF JOHN A.V. NICOLETTI, ESQ.** |

I, John A.V. Nicoletti, Esq., a member of bar of this Court, declare under penalty of perjury of the laws of the United States of America as follows:

1.    I am the managing partner of the law firm of Nicoletti, Hornig & Sweeney (hereinafter "NHS"), who was formerly counsel of record for SAI Trust and Robert Membreño (hereinafter collectively "SAI"), in litigation in the Bankruptcy Court and District Court for the Southern District of New York.

2.    In 2004, NHS was retained by SAI to represent its interests in a Chapter 11 bankruptcy proceeding filed by Calpine Corp. in Bankruptcy Court for the Southern District of New York, under docket number 05-B-60200 (BRL). SAI was seeking to enforce the terms of an agreement under it was to receive monthly payments from Calpine as a percentage of the net profits of the West Ford Flat Geothermal Facility in California.

1

3. I assigned attorney Lawrence C. Glynn, an associate of NHS, to work on the case.

4. Mr. Glynn was employed by NHS as an associate from April 10, 2000, through October 2009. The official date of his separation was October 31, 2009, although he likely ceased active work on NHS matters on or about October 7, 2009. Throughout that date, he was always an employee and never an independent contractor. He was always paid a regular salary, and all of his compensation for each year from 2000 through 2009 was recorded on a W-2 statement and never on an IRS 1099 form.

5. Under the terms of his employment with NHS, Mr. Glynn was not permitted to work on legal matters for his own account. Any legal work he performed for any client that had retained NHS during the period of his employment was solely for the account of NHS, and only NHS was permitted to bill clients for that work.

6. Mr. Glynn was actively working on matters for NHS at least through the date of October 7, 2009, and NHS was counsel of record for SAI at least through that date.

7. To the extent Mr. Glynn may have submitted invoices to SAI for legal work he performed during the period from September 1, 2009, through October 7, 2009, such billing was unauthorized, in that NHS was still counsel of record for SAI, and such billing would have been a violation of the terms of Mr. Glynn's employment with NHS.

8. On or about January 9, 2010, NHS submitted its final invoice to SAI, which included time entries for work Mr. Glynn performed as an associate in the employ of NHS for the month of September 2009 and for the first week of October 2009. SAI paid NHS's final invoice in full in 2010.

The foregoing is declared to be true and correct under penalty of perjury of the laws of the United States of America.

Dated: February 15, 2013
      New York, New York

                                                                                       _____
                                                                                            John A.V. Nicoletti