HILL RIVKINS LLP
45 Broadway – Suite 1500
New York, NY 10006
Telephone: 212-669-0600
Facsimile: 212-669-0698
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARUSO GLYNN, LLC<br><br>                  Plaintiff,<br><br>    -Against-<br><br>SAI TRUST and ROBERT MEMBRENO,<br>Individually and as Trustee for SAI TRUST,<br><br>                  Defendants. | Civil Action No.: 7:11-cv-4360 (VB)<br>ECF CASE |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF DEFENDANTS/ COUNTERCLAIM PLAINTIFFS, SAI
TRUST AND ROBERT MEMBRENO, FOR SUMMARY JUDGMENT**

Of Counsel:

                                            John J. Sullivan, Esq.
                                            HILL RIVKINS LLP
                                            Attorneys for Defendants/ Counterclaim
                                            Plaintiffs SAI TRUST and ROBERT
                                            MEMBRENO
                                            45 Broadway, Suite 1500
                                            New York, NY 10006
                                            (212) 669-0600
                                            jsullivan@hillrivkins.com

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ARGUMENT

    1.  No Agreement on a Contingency Fee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

    2.  SAI's Discharge of CG for Cause Precludes any Further Fee Claim. . . . . . . . . .   7

    3.  CG Cannot Recover for an Account Stated. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    4.  SAI Is Entitled to a Refund for Overpayment of Fees. . . . . . . . . . . . . . . . . . . . .   8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

# **TABLE OF AUTHORITIES**

**CASE LAW**

Banus v. Citigroup Global Markets, Inc.,
757 F. Supp. 394 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Cannon v. First National Bank of East Islip,
469 N.Y.S.2d 101 (App. Div. 2d Dep't 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Compagnola v. Mulholland, Minion & Roe,
555 N.E.2d 611 (N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Ezagui v. City of New Rochelle, 726 F. Supp. 2d 275 (S.D.N.Y. 2010) . . . . . . . . . . . . . . .  3

Gair v. Peck, 160 N.E.2d 43 (N.Y. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Greene v. Greene, 436 N.E.2d 496 (N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Harley & Browne v. Ressler & Ressler, 957 F. Supp. 44 (S.D.N.Y. 1997) . . . . . . . . . . . . .  8

In re Wasserman, 845 N.Y.S.2d 127 (2d Dep't 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jacobson v. Sassower, 489 N.E.2d 1283 (N.Y. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

King v. Fox, 851 N.E.2d 1184 (N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Lawrence v. Miller, 901 N.E.2d 1268 (N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Liddle & Robinson, LLP v. Garrett, 720 F. Supp. 2d 417 (S.D.N.Y. 2010) . . . . . . . . . . . . .  8

Mar Oil, S.A. v. Morrissey, 982 F.2d 830 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Millus v. D'Angelo, 224 F.3d 137 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Selective Ins. Co. of Amer. v. Mazure,
772 N.Y.S.2d 12 (App. Div. 1st Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Universal Calvary Church v. City of New York,
2000 WL 1745048 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER AUTHORITIES**

Rest. (3d) Law Governing Lawyers ¶ 39 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**PRELIMINARY STATEMENT**

Defendants/Counterclaim Plaintiffs, SAI TRUST (hereinafter "SAI") and trustee, ROBERT MEMBREÑO, hereby submit this reply memorandum of law in further support of their motion for summary judgment to dismiss the complaint of the Plaintiff/Counterclaim Defendant, CARUSO GLYNN LLC (hereinafter "CG") and to recover the sum of $4,320.16 on their counterclaim against CG.  CG's opposition tries to downplay not only the lack of any expression by SAI to CG's unilateral proposal for a contingency agreement, but also, more importantly, the express agreement between the parties in December 2009 that the representation would be on an hourly basis.  Instead, CG focuses on the tangential argument of whether SAI's instructions to CG on February 5, 2010, to cease working on SAI's case against Calpine Corp. and to perform no further work unless expressly directed constituted a "discharge".  Not only is CG's focus on the extent to which it was discharged irrelevant to the issue of whether it may recover a contingency fee to which its client never agreed, but it also improperly asks the Court to draw factually impermissible inferences.  Contrary to CG's arguments of legally and factually dubious value, CG's claims for a contingency fee in this case cannot stand in the face of the following:

1)  CG's October 8, 2009, e-mail to SAI contained only a proposal for either a contingency fee or an hourly fee;

2)  SAI never expressed any agreement to CG's contingency fee proposal;

3)  CG repeatedly tried to justify its contingency fee on the basis that it would be paid by Calpine, not SAI;

4)  CG admitted on December 8, 2009, that it had "arbitrarily changed [its] fee agreement with SAI";

5)   SAI expressly rejected the contingency fee proposal on December 8, 2009, and December 11, 2009;

6)   On December 11, 2009, CG "acquiesce[d] and agree[d] to remain on a time basis";

7)   On December 21, 2009, CG wrote, "[a]s for the fee arrangement, I will acquiesce to SAIT's position that this be handled on a strictly time basis, as SAIT has done with all past counsel";

8)   CG billed SAI on a time basis going forward from December 11, 2009, and retroactively to October 2009;

9)   CG's confirmed the parties' agreement that the representation was on an hourly basis by suing SAI in New York State court claiming for unpaid hourly fees, rather than for a contingency fee;

10)  New York law unambiguously rejects any causes of action seeking to enforce a terminated or rejected contingency fee agreement.

SAI is therefore entitled to summary judgment dismissing CG's complaint.  With regard to SAI's counterclaim, CG has offered opposition based only on patently inapposite principles of accord and satisfaction, which have no application to arrangements between attorneys and their clients.  Accordingly, SAI is entitled to judgment on its counterclaim in the amount of $4,320.16.

## ARGUMENT

**1.   No Agreement on a Contingency Fee**

CG goes to considerable lengths to try to explain why it allegedly favored a contingency fee  and why it now asserts SAI might have been interested in a contingency arrangement, but offer again fails to offer any facts that suggest that SAI ever actually expressed any agreement whatsoever to the proposal.  In the face of this lack of any evidence of agreement by SAI, CG is

similarly unable to cite to any legal authority to justify its attempts to unilaterally and admittedly "arbitrarily" change its fee structure from hourly to contingent.  As the Second Circuit has held, an attorney may not unilaterally change representation on an hourly basis to a contingency fee, but rather may alter the arrangement only after obtaining a knowing, voluntary expression of consent by the client.  Mar Oil, S.A. v. Morrissey, 982 F.2d 830, 839 (2d Cir. 1993).  Despite two rounds of briefing, CG has not pointed to a single act by SAI that remotely can be deemed a knowing expression of agreement to CG's contingent fee proposal.[1]

Although CG claims it tried to explain its contingency fee proposal "in clear, unambiguous terms, as if explaining it to a small child" (Opposition Memorandum at 5), it conveniently ignores the fact that the information it was providing to SAI as justification for its proposal was false.  Although CG now offers several self-serving rationalizations, in 2009 it tried to justify the contingency fee by the false premise that it would be looking to be paid a contingency fee by Calpine, not SAI.  Beginning on October 8, 2009, when it first informed SAI of its existence and proposed either a contingency fee or higher hourly rate, it sought to justify the higher contingency fee on that basis that "as the Southern District Court has ruled that Calpine is ultimately responsible for all attorneys' fees, I propose that going forward, I will continue to handle this matter on a contingency fee basis".  (RM Mov. Dec. Exh. C).  In response to SAI's first questioning of the proposal, CG again wrote on October 20, 2009, that "It is

---

[1] CG's Response to SAI's Local Rule 56.1 Statement contains numerous responses, purported denials and improper arguments that have no evidentiary support.  Under established precedent in this circuit and district, such responses are deemed admissions for purposes of SAI's motion.  Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000); Ezagui v. City of New Rochelle, 726 F. Supp. 2d 275, 285 n. 8 (S.D.N.Y. 2010); Universal Calvary Church v. City of New York, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. 2000).  Accordingly, the following numbered statements in SAI's Local 56.1 Statement are deemed admitted: 1 through 6, 11, 12, 29, 38, 43, 44, 48, 50 through 53, 56, 59, 61 through 64, 66, 72, 75 through 83, 85, 88, 93, 94, and 105 through 108.

3

ultimately Calpine who will pay, not SAI Trust", and "again, it is Calpine, not SAI Trust, who will ultimately pay my fees".  (MM Mov. Dec. Exh. AA at 1).  On November 23, 2009, after SAI questioned why the invoice submitted for October 2009 stated "Fee waived", Mr. Glynn wrote that he wanted to change the fee to a contingency "because ultimately Calpine must pay my fee, not SAI".  (MM Mov. Dec. Exh. BB at 1).  After SAI informed CG on December 8, 2009, that "we do not agree with adopting a contingency fee", CG replied, "this is not a typical case because the contract does call for Calpine to pay attorney's fees and Judge Marrero has specifically so found.  But for that fact, I would not have arbitrarily changed my fee arrangement with SAI".  (MM Mov. Dec. Exh. CC at 1).

   Because CG's representations that it would be collecting a contingency fee from Calpine rather than from SAI were not true, CG cannot possibly have satisfied its obligations under the decisions of the New York Court of Appeals in King v. Fox, 851 N.E.2d 1184, 1191 (N.Y. 2006), Jacobson v. Sassower, 489 N.E.2d 1283, 1284 (N.Y. 1985), and Greene v. Greene, 436 N.E.2d 496, 499 (N.Y. 1982), to demonstrate that it obtained SAI's consent, or that it fully explained SAI's obligations under the supposed agreement.  CG appears to argue that its attempts to unilaterally impose a contingency fee upon SAI should be endorsed because SAI was a sophisticated entity.  However, CG has not cited a single case for the proposition that any level of the client's sophistication could relieve the attorney of its obligation to explain clearly and accurately the nature of its contingency fee proposal and to obtain the client's actual agreement to the proposal.  Similarly unavailing is the citation to the Restatement (Third) of the Law Governing Lawyers, which does not contain any provision permitting a lawyer to impose a contingency fee without the client's consent, but instead limits the attorney's recovery to

4

*quantum meruit* when there is no "valid contract providing for another measure of compensation". Rest. (3d) Law Governing Lawyers ¶ 39 (2000).

CG cannot overcome the undisputed fact that SAI agreed only to pay hourly fees and never consented in any way to a contingency fee. (SAI Local Rule 56.1 Statement ¶¶ 29-30, 39, 44). CG incorrectly claims that SAI cannot point to any evidence that it ever accepted an increased hourly rate (Opposition Memorandum at 3), but ignores that SAI's agreement was demonstrated by its actually paying the higher rate, following CG's submission of its first hourly invoice on October 8, 2009. As set out in SAI's moving papers, the first invoice CG submitted to SAI, covering September 2009, was entirely improper, because Mr. Glynn was still employed by Nicoletti Hornig & Sweeney ("NHS"), counsel of record SAI until at least October 8, 2009. Only when NHS submitted its own invoice in January 2010 for September 2009 did SAI learn that it had been improperly billed by CG for more than $8,000. Nevertheless, SAI made payments on October 20, 2009, and on November 23, 2009, towards CG's first invoice, compensating CG at the rate of $320 per hour. (RM Mov. Dec. Exh. G at 4; MM Mov. Dec. Exh. MM at 1-3).

CG cites to the entirely distinguishable case of <u>Lawrence v. Miller</u>, 901 N.E.2d 1268 (N.Y. 2008), apparently to argue that SAI had no right to refuse to agree to CG's contingency fee proposal. In stark contrast to SAI, ***it was the client*** in <u>Lawrence</u> that had approached the attorney to request a modification of the fee agreement to switch from an hourly rate to a modified flat/contingency fee, and the attorney and client actually entered into a retainer agreement. 901 N.E.2d at 1269. Only after the attorneys had negotiated a favorable settlement a few months later did the client attempt to repudiate her obligation to pay the contingency portion of the fee. Contrary to CG's suggestion, the Court of Appeal did not simply enforce the contingency fee

portion of the fee, but merely affirmed the denial of the client's CPLR 3211 motion to dismiss. The case was then remanded for a determination on the merits of whether the retainer agreement was unenforceable as unconscionable. In this case, CG cannot even show that SAI ever agreed to a change in fee structure. At most, it can show that SAI did not immediately communicate its express rejection of the proposal.

The timing of SAI's rejection is immaterial in any event, because CG agreed that it would "remain on a time basis" (MM Dec. Exh. DD at 3), and that it would "acquiesce to SAIT's position that this be handled on a strictly time basis, as SAIT has done with all past counsel" (MM Mov. Dec. Exh. GG at 1). (SAI Local Rule 56.1 Statement ¶¶ 45, 56). CG now argues that the confirmation of its agreement to remain on a time basis fails for indefiniteness. Putting aside the irony of CG's relying on indefiniteness while claiming a contingency fee to which SAI never expressed any agreement, CG's claim is incorrect both legally and factually. The cases it cites regarding principles for contract modifications are irrelevant to attorney-client fee agreements, which can be terminated by a client at any time, King v. Fox, 851 N.E.2d 1184, 1191-92 (N.Y. 2006); Gair v. Peck, 160 N.E.2d 43, 48 (N.Y. 1959), with or without a definite agreement for a new fee structure, Selective Ins. Co. of Amer. v. Mazure, 772 N.Y.S.2d 12, 14 (App. Div. 1st Dep't 2004). Its factual claim that the agreement was insufficiently definite is contradicted by the fact that both parties actually performed under the hourly fee agreement. See Banus v. Citigroup Global Markets, Inc., 757 F. Supp. 394, 402 n.53 (S.D.N.Y. 2010) (concluding that a plaintiff's argument that an agreement was unenforceable because of an indefinite price term was "completely frivolous" where the parties had already performed under the agreement). Not only did CG state that it would agree to remain on a time basis, it actually billed SAI for hourly fees going forward as well as retroactively. SAI paid those fees, making

deductions to account only for CG's improper billing, such as for time spent while Mr. Glynn was still employed by NHS and while he was trying to convince SAI to agree to his contingency fee proposal.[2]  CG even sued SAI in New York state court seeking recovery for hourly fees, unquestionably demonstrating that the parties had a valid agreement for payment on an hourly basis.

## 2. SAI's Discharge of CG for Cause Precludes any Further Fee Claim

As set out in detail in Point II.A of SAI's Memorandum of Law in Opposition to CG's motion, CG's argument that it was not discharged cannot stand.  SAI advised CG on February 5, 2010, that it would not authorize any payments for future services absent specific prior approval, and that CG was to perform no further legal work on the matter.  (MM. Mov. Decl. Exh. JJ). Following that message, CG in fact performed no further legal work for SAI. (RM Mov. Dec. Exh. L at 3, Exh. N).  CG's ineffectual denials in its response to SAI's Local 56.1 Statement that it was discharged are not supported by any evidentiary citations[3] and Mr. Glynn's own opposition declaration is conspicuously silent regarding his representation of and termination by SAI.

Similarly unsupported by any evidentiary citations are CG's denials in its 56.1 response regarding the errors and omissions it made that caused SAI to terminate the representation.

---

[2] Even under traditional contract principles, CG's claim that SAI failed to pay a performance bonus cannot stand.  SAI proposed the performance bonus on December 11, 2009, as follows:"For the settlement, Robert stated SAIT will pay all current invoices due, and agree to add a $10,000 performance bonus."  (MM Mov. Dec. Exh. DD at 5).  CG eventually replied with a counteroffer to increase the performance bonus to $25,000 (*Id.* at 3), which under basic contract law operated as a rejection of the proposal.  CG then belatedly tried to accept the $10,000 proposal on December 21, 2009 (MM Mov. Dec. Exh. GG at 1), but its earlier counterproposal had terminated the original offer.  In any event, because CG was not able to consummate a settlement, requiring SAI to engage California counsel (RM Mov. Dec. ¶¶ 30-39; RM Opp. Dec. ¶¶ 8-11), CG never earned any performance bonus.

[3] See *supra*, note 1.

Consequently, it is undisputed that: CG failed to understand the nature of the settlement it was supposedly negotiating with Calpine (¶ 66); SAI concluded that Mr. Glynn had been negotiating with Calpine for his own supposed contingency fee, and not simply a recovery for SAI (¶ 75); CG made an unauthorized settlement demand to Calpine of $975,000, which included the contingency fee to which SAI had never agreed (¶¶ 72, 77);  CG's exorbitant demand for a contingency fee had been holding up settlement negotiations, and threatened the possibility of a settlement altogether (¶ 76); Mr. Glynn had made false statements to SAI regarding the extent to which he had agreed with Calpine that any settlement would be for a general unsecured claim (¶ 79); and SAI had no choice but to conclude that continuing to employ CG would have extended negotiations with Calpine at SAI's expense (¶ 81).  SAI's termination of CG was therefore cause, precluding any recovery for a contingency fee or under a charging lien.  Harley & Browne v. Ressler & Ressler, 957 F. Supp. 44, 48-49 (S.D.N.Y. 1997); Compagnola v. Mulholland, Minion & Roe, 555 N.E.2d 611, 614 (N.Y. 1990).

**3.      CG Cannot Recover for an Account Stated**

Although CG has attempted to criticize Judge Leisure's holding in Liddle & Robinson, L.L.P. v. Garrett, 720 F. Supp. 2d 417, 424-26 (S.D.N.Y. 2010), it has not cited to any case that permits an attorney to collect a contingency fee on an account stated theory.  It also has failed to offer any response to the holding of Cannon v. First National Bank of East Islip, 469 N.Y.S.2d 101 (App. Div. 2d Dep't 1983), that an account stated cannot be maintained where the purported statement of account does not set out any specific sum that is supposedly due.  Finally, although it falsely states that CG never objected to CG's attempt to impose a contingency fee, the record is undisputed that on December 8 and 11, 2009, SAI unequivocally informed CG that it would not agree to a contingency fee (SAI Local Rule 56.1 Statement ¶¶ 39, 44), and that CG accepted SAI's

rejection of the contingency fee (*Id.*¶¶ 45, 56, 103). CG's token argument at Point IV of its Opposition Memorandum is therefore frivolous.

### 4. SAI Is Entitled to a Refund for Overpayment of Fees

CG's opposition to SAI's counterclaim is based primarily upon the highly dubious Declaration of Lawrence R. Munck, which seeks to raise a factual issue regarding the employment status of Mr. Glynn in the final year before he left NHS.[4] Mr. Munck's statements regarding what the partners of NHS supposedly "understood" (Munck Decl. ¶ 3) is inadmissible as hearsay and as beyond the scope of his competency as a witness. Nevertheless, regardless of whether Mr. Glynn considered himself an associate or of counsel, he was at all times acting on behalf of NHS through October 7, 2009, and NHS was the sole counsel of record and the only party that was permitted to bill SAI for work on the Calpine matter through that date. His attempt to obtain payment for his own account for work performed while he was working for NHS was patently improper and a breach of his good faith duties to his client. SAI is therefore entitled to a credit for the amount of $8,928 for all legal fees CG improperly billed from September 1, 2009, through October 7, 2009. (SAI Rule 56.1 Statement ¶87).[5] In addition, because CG improperly billed SAI for time Mr. Glynn spent in December trying to convince SAI

---

[4] SAI's joins in Mr. Munck's request of March 21, 2013, that his entire declaration be withdrawn as inaccurate (Docket Entry No. 57). The only sworn statement CG offered that Mr. Glynn ceased being an employee of NHS in 2008 was by Mr. Munck, rather than Mr. Glynn himself, who tellingly does not state under oath that he was resigned from NHS in 2008. None of the denials in CG's Rule 56.1 were made under oath, and are therefore deemed admissions under Local Rule 56.1(d). That Mr. Glynn was still employed as an associate with NHS after November 2008 is confirmed by a statement he did make under oath in one of the cases from the list of cases on which he has worked as set out in Exhibit P to his Declaration in support of CG's own motion. In an affidavit dated April 27, 2009, and filed via ECF in case number 1:08-5213(AJP) [Docket Entry 23], Mr. Glynn stated that he was "associated with the law firm of Nicoletti Hornig & Sweeney", clearly reflecting his status as an associate, not of counsel, to NHS.

[5] CG has denied Paragraph 87 only to the extent of whether Mr. Glynn was still an associate for NHS after November 2008, based solely on the Munck Declaration. The remainder of the Paragraph must therefore be deemed admitted under Local Rule 56.1(d).

to accede to his contingency fee proposal, SAI was entitled to an additional credit of $1,952.00. (SAI Local Rule Statement ¶¶ 90-92). After deductions SAI made in its payments to CG, SAI is still owed a net refund of $4,320.16, as set out in detail in Point IV of its Moving Memorandum of law, under the rule that an attorney is obligated to refund legal fees paid in advance that are not earned. Jacobson v. Sassower, 489 N.E.2d 1283, 1284 (N.Y. 1985); In re Wasserman, 845 N.Y.S.2d 127, 127 (2d Dep't 2012).

## CONCLUSION

As set out in detail above, as well as in SAI's Moving Memorandum and in its Memorandum of Law in Opposition to CG's motion, SAI is entitled to summary judgment dismissing the complaint and granting it judgment on its counterclaim in the amount of $4,320.16.

Respectfully submitted,

Dated: New York, New York
       March 22, 2013

HILL RIVKINS LLP
Attorneys for Defendants/Counterclaim Plaintiffs
*SAI Trust and Robert Membreño*

By: _____
       John J. Sullivan
    45 Broadway – Suite 1500
    New York, New York 10006
    212-669-0600
    212-669-0698 (fax)
    jsullivan@hillrivkins.com