HILL RIVKINS LLP
45 Broadway – Suite 1500
New York, NY 10006
Telephone: 212-669-0600
Facsimile: 212-669-0698
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARUSO GLYNN, LLC<br><br>                    Plaintiff,<br><br>      -Against-<br><br>SAI TRUST and ROBERT MEMBRENO,<br>Individually and as Trustee for SAI TRUST,<br><br><br>                    Defendants. | Civil Action No.: 7:11-cv-4360 (VB)<br>ECF CASE<br><br><br>**CORRECTED RESPONSE TO**<br>**PLAINTIFF'S RULE 56.1 STATEMENT**<br>**OF MATERIAL FACTS NOT IN DISPUTE** |

Pursuant to Local Rule 56.1(b), Defendants/Counterclaim Plaintiffs, SAI TRUST (hereinafter ("SAI") and ROBERT MEMBREÑO, by and through their undersigned counsel, hereby respond to the Local Rule 56.1 Statement of Material, Undisputed Facts of the Plaintiff, CARUSO GLYNN, LLC, ("hereinafter "CG"), dated February 15, 2013, as follows (all numbered paragraphs herein corresponding to the same numbered paragraph in Plaintiff's Statement):

1.      On October 8, 2009, Plaintiff entered into an agreement with SAI to handle its lawsuit involving a complex royalties dispute with Calpine Corp ("Calpine"), wherein Calpine unilaterally began charging "allocated expenses" to the monthly Net Profit Interest ("NPI") due to SAI in or about April 2001. These NPI payments flowed from a 1987 asset purchase agreement ("the 1987 Agreement) between SAI and Calpine's predecessor. A detailed

1

substantive and procedural history of the underlying bankruptcy action is set forth in the

Decision and Order of this Court dated June 9, 2009 in *Robert Membreno as trustee of SAI Trust*

*v. Calpine Corp., et al.*, 406 B.R. 463 (S.D.N.Y. 2009), ("Decision and Order") which is annexed

to the Declaration of Lawrence C. Glynn ("Glynn Dec.") as Exhibit A and is hereby incorporated

by reference. Glynn Dec., ¶1.

      **Response**

Admit that Exhibit A to the moving declaration of Lawrence C. Glynn, dated February 15, 2013

(hereinafter "Glynn Dec.") is a true and accurate copy of a decision and order issued by Judge

Marrero dated June 9, 2009, and that the decision and order accurately sets out the substantive

and procedural history of the underlying dispute between SAI and Calpine Corp. ("Calpine"),

and that the underlying dispute arose from a breach by Calpine of its obligations as the assignee

of a 1987 asset purchase agreement, and that during the month of October 2009, SAI switched

counsel in its underlying dispute with Calpine from the firm of Nicoletti, Hornig & Sweeney

("NHS") to CG.  However, SAI denies that it entered into an agreement with CG on October 8,

2009.  Moving Decl. of John J. Sullivan dated February 15, 2013 (hereinafter "Sullivan Dec. "

Exh. AAA at 7-9; Moving Decl. of Robert Membreño dated February 15, 2013 (hereinafter "RM

Mov. Dec.") ¶¶ 17-18, 21.


      2.      Under the terms of the engagement letter, Plaintiff agreed to handle the case

against Calpine on a contingency fee basis of 22.5% of the gross amount recovered plus

disbursements.  Glynn Dec., ¶2, Exhibit B.

      **Response**

Denied.  On October 8, 2009, CG simply sent SAI an e-mail advising that Mr. Glynn was

"winding down [his] employment with" NHS and that he would continue to represent SAI as his

own firm, and proposed either a contingency fee of 22.5% or an hourly rate increasing from

$260.00 to $320.00.  RM Mov. Dec.) ¶¶ 14-16, Exh. C.


3.        On October 8, 2009, SAI had a choice of either 1) maintaining the action with

prior counsel (Nicoletti Hornig & Sweeney); 2) finding new counsel, or 3) employing Plaintiff.

Glynn. Dec., ¶3

**Response**

Denied.  RM Mov. Dec. Exh. C.


4.        This fee arrangement was submitted to SAI at the commencement of the attorney

client relationship between CG and SAI, and at a time when the matter was on appeal to the

Second Circuit. Federal appeals are a time consuming and costly endeavor. This is especially

true in cases such as this where the record on appeal was approximately 20,000 pages. The

amount of time necessary to prepare this matter for appeal could have easily approached 200

hours and, had the Second Circuit reversed Judge Marrero, the matter would have been

remanded back to the United States Bankruptcy Court for the Southern District of New York.

Glynn Dec., ¶4.

**Response**

Denied insofar as the evidence offered in support of Paragraph 4 of the Plaintiff's statement is

not in admissible form as required by Local Rule 56.1(d), as the purported facts and opinions

assertions in Paragraph 4 of the Plaintiff's moving declaration are not supported by a proper

foundation.   To the extent any part of the evidence on which Paragraph 4 is based may be admissible under Rule 56(c), SAI admits that the underlying litigation between SAI and Calpine was pending before the Second Circuit on October 8, 2009, but denies the remainder of Paragraph 4.  Opposition Declaration of Marc Membreño dated March 8, 2013 (hereinafter ("MM Opp. Dec.") ¶¶ 5-12.

5. SAI was looking at potentially years worth of future litigation in October 2009 and potentially astronomical legal fees on a time basis. Glynn Dec., ¶5.

**Response**

Denied insofar as the evidence offered in support of Paragraph 5 of the Plaintiff's statement is not in admissible form as required by Local Rule 56.1(d), as the purported facts and opinions assertions in Paragraph 5 of the Plaintiff's moving declaration are not supported by a proper foundation.   To the extent any part of the evidence on which Paragraph 5 is based may be admissible under Rule 56(c), it is denied.  MM Opp. Dec. ¶¶ 5-12.

6.     In deciding to handle SAI's claims on a contingency fee basis, Plaintiff was willing to accept the uncertainty that goes with handling a matter on a contingency fee basis, including substantial out of pocket expenses and the possibility of getting absolutely no compensation had the matter been lost. Glynn Dec., ¶6.

**Response**

Denied that CG was assuming the risk of incurring "substantial out of pocket expenses" (RM Mov. Dec. Exh. C), but the remainder of Paragraph 6 is admitted.

7.      Given the three choices aforesaid, On October 8, 2009, SAI chose to have Plaintiff handle the matter. Glynn Dec., ¶7.

**Response**

Denied. RM Mov. Dec. Exh. C.


8.      SAI never objected to the contingency fee arrangement. Glynn Dec., ¶8.

**Response**

Denied.  RM Mov. Dec. ¶¶ 22-23; Moving Decl. of Marc Membreño dated February 15, 2013 (hereinafter "MM Mov. Dec.") ¶¶ 9-11, Exh. CC at 2-3, Exh. DD at 4. Exh. EE at 3, Exh. GG at 3.


9.      On October 20, 2009, Plaintiff responded to SAI's e-mail of even date informing that for the first time in over eight years, Calpine did not deduct allocated expenses from the monthly NPI statement for August 2009. Glynn Dec., ¶9, Exhibit C.

**Response**

Admitted.


10      Indeed, it was an improper deduction of allocated expenses for an eight year period that was the central issue to the ongoing litigation between SAI and Calpine. Specifically, SAI sued Calpine over the latter's unilateral deduction from NPI payments for unauthorized "allocated costs" for its joint operations and an unauthorized 15% "overhead" charge after Calpine acquired numerous power plants throughout Northern California. Glynn Dec., ¶10.

**Response**

Admitted.


11       In Plaintiff's October 20, 2009 response, written 12 days after the initial

engagement letter (October 8, 2009 email), Plaintiff noted that the threats of impending lawsuits

against Calpine was undoubtedly the reason for Calpine's sudden compliance with the terms of

the agreement. Glynn Dec., ¶11.

**Response**

Admitted that CG wrote to SAI on October 20, 2009, stating in part that "I have let them know

that future lawsuits are certainly possible if they continue to breach the agreement", and that

October 20, 2009, was 12 days later than the October 8, 2009, notification that Mr. Glynn was

leaving NHS to form his own firm, but otherwise denies the remainder of the assertions in

Paragraph 11 as unsupported by the plain language of CG's October 20, 2009 e-mail.  MM Mov.

Dec. Exh. AA at 2.


12.      Plaintiff also took the opportunity in that October 20, 2009 email to again request

confirmation from Defendants to the contingency fee terms outlined in the October 8, 2009

email. Glynn Dec., ¶12.

**Response**

Admitted that CG's October 20, 2009, stated in part "please confirm that SAI has no objection to

my handling the matter on a contingency fee basis going forward (22.5% of the gross recovery

plus disbursements)", but otherwise denied as to the remainder of assertions beyond this

admission.  MM Mov. Dec. Exh. A at 2.

13.     In response, on October 20, 2009, Marc Membreno, apparently on behalf of SAI and Robert Membreno, sent a second e-mail which stated: "I'm a little confused with your contingency proposal. We have thus far been invoiced by our previous counsel plus Nicoletti Hornig & Sweeney a total of $175,000.00. If the settlement were hypothetically $770,000.00, you would be entitled, under this scenario, to $173,250.00 (plus disbursements) - roughly equal to the amount already invoiced for the work up until now. The other option is continuing with the hourly rate which has now risen some 23% since your departure. Is my understanding correct? Glynn Dec., ¶13, Exhibit D.

**Response**

Admitted.


14.     Aside from Marc Membreno being "a little confused," there is no evidence that either SAI or Robert Membreno were confused. Glynn Dec., ¶14.

**Response**

Denied.  MM Mov. Dec. ¶¶ 6-8, Exh. AA at 1-2, Exh. BB at 1, Exh. EE at 3; RM Mov. Dec. ¶¶ 19, 22; RM Opp. Dec. ¶ 7.


15.     Aside from Marc Membreno being "a little confused," there was no objection to the contingency fee stated in this October 20, 2009 email. Glynn Dec., ¶15.

**Response**

Denied.  MM Mov. Dec. ¶ 7, Exh. AA at 1-2, Exh. EE at 3.

16.     Aside from Marc Membreno being "a little confused," there was no election made by Defendants to proceed under a time basis as opposed to a contingency fee basis. Glynn Dec., ¶16.

**Response**

Denied.  RM Mov. Dec. ¶¶ 23, 26, MM Mov. Dec. ¶¶ 10-11, Exh. CC at 2-3, Exh. DD at 4-5, Exh. GG at 3.


17.     Plaintiff responded to this email on October 20, 2009 and confirmed that Marc Membreno's understanding was correct. Glynn Dec., ¶17, Exhibit D

**Response**

Denied.  Plaintiff's assertions in Paragraph 17 are unsupported by the plain language of CG's October 20, 2009, e-mail.  MM Mov. Dec. Exh. AA at 1.


18.     Thereafter, neither Marc Membreno, Robert Membreno nor anyone else form SAI ever expressed a desire to continue on a time basis. Glynn Dec., ¶18.

**Response**

Denied.  RM Mov. Dec. ¶¶ 23, 26; MM Mov. Dec. ¶¶ 10-11, Exh. CC at 2-3, Exh. DD at 4-5, Exh. EE at 3, Exh. GG at 3.


19.     Thereafter, neither Marc Membreno, Robert Membreno nor anyone else form SAI ever expressed an objection to the 22.5% contingency fee. Glynn Dec., ¶19.

**Response**

Denied.  RM Mov. Dec. ¶¶ 23, 26; MM Mov. Dec. ¶¶ 10-11, Exh. CC at 2-3, Exh. DD at 4-5,

Exh. EE at 3, Exh. GG at 3.


20.     By any fair reading of Plaintiff's October 8, 2009 engagement email and the

follow up explanation provided on October 20, 2009, Defendants received an "explanation of

attorney's fees to be charged, expenses and billing practices" as required under NYCCRR §

1215.1. Glynn Dec., ¶20.

**Response**

Denied.  The plain language of CG's e-mails of October 8, 2009, and October 20, 2009, to SAI

proposed two alternative fee arrangements, one contingent and one on an hourly basis at an

increased rate.  RM Mov. Dec. Exh. C; MM Mov. Dec. Exh. AA at 1.


21.     On October 30, 2009, having not received any objection to the contingency fee

for three weeks, and following further explanation of the nature of the relationship on October

20, 2009, Plaintiff again referenced the contingency fee arrangement and even offered a lower

contingency fee rate to 15% if the matter settled without having to go through appeal. Glynn

Dec., ¶21, Exhibit E.

**Response**

Admitted.


22.     Thereafter, neither Marc Membreno, Robert Membreno nor anyone else form SAI

ever expressed an objection to the contingency fee. Glynn Dec., ¶22.

**Response**

Denied.  RM Mov. Dec. ¶¶ 23, 26; MM Mov. Dec. ¶¶ 10-11, Exh. CC at 2-3, Exh. DD at 4-5, Exh. EE at 3. Exh. GG at 3.

23.     On November 2, 2009, Plaintiff sent an invoice confirming that the matter was being handled on a contingency fee basis. Glynn Dec., ¶23, Exhibit F.

**Response**

Admitted that the plaintiff sent an invoice on or about November 2, 2009, indicating a contingency fee, but denied that SAI ever authorized or agreed to CG's representing it on a contingency fee basis.  RM Mov. Dec. ¶¶ 17, 21; MM Mov. Dec. Exh. CC at 2-3, Exh. DD at 2, 4-5, Exh. EE at 3, Exh. GG at 3.

24.     Said invoice contained contemporaneous time records which demonstrated that while attorney's time was being recorded, there was **no** hourly charge for this work and instead, the words "**Contingency Fee - fee waived**" was inserted into the space where the dollar value of a time fee otherwise would have been inserted. Glynn Dec., ¶24, Exhibit F.

**Response**

Admitted.

25      At no time during the month of November 2009, nor at any time thereafter, did Marc Membreno, Robert Membreno or anyone else form SAI ever express an objection to the 22.5% contingency fee. Glynn Dec., ¶25.

**Response**

Denied.  RM Mov. Dec. ¶¶ 22-23, 26; MM Mov. Dec. ¶¶ 9-11, Exh. CC at 2-3, Exh. DD at 4-5, Exh. GG at 3.

26. On November 23, 2009, Marc Membreno sent an e-mail which stated: "Wondering why you have 'No Charge' listed on time sheet/invoice." Glynn Dec., ¶26, Exhibit G.

**Response**

Admitted.

27.     On November 23, 2009, the contingency fee was explained, for a third time, in Plaintiff's response e-mail which states, in pertinent part:

> As of October 1, 2009, I'm handling the matter on a contingency fee basis going forward. You will recall that I will take my fee if and when we recover from Calpine. I did this because ultimately Calpine must pay my fee, not SAI. The fee I will insist Calpine pay is a very reasonable 22.5% of the recovery, not including any past attorney's fees/accounting fees ultimately recovered. I believe this is mutually beneficial to both myself and SAI as SAI will not be burdened with attorney's fees going forward. That is why there is "no charge" on the October invoice. Please note that I must still account for my time in the event that Judge Lifland decides that Calpine should only pay my hourly rate and not a contingency fee.

Glynn Dec., ¶27, Exhibit G.

**Response**

Admitted.

28.     On December 2, 2009, Plaintiff sent an invoice once again confirming that the matter was being handled on a contingency fee basis. Glynn Dec., ¶28, Exhibit H.

**Response**

Admitted that the plaintiff sent an invoice on or about December 2, 2009, indicating a

contingency fee, but the remainder of Paragraph 28 is denied to the extent it can be read to

suggest that SAI ever authorized or agreed to CG's representing it on a contingency fee basis.

RM Mov. Dec. ¶¶ 17, 21; MM Mov. Dec. Exh. CC at 2-3, Exh. DD at 2, 4-5, Exh. EE at 3, Exh.

GG at 3.

29.    On December 8, 2009, Defendants stated in an email that "[w]e are very

concerned...." Glynn Dec., ¶29, Exhibit I.

**Response**

Admitted.

30.    At no point in their December 8, 2009 email did Defendants ever object to the

22.5% contingency fee, but merely expressed 1) concern, 2) an explanation of their history with

prior counsel, and 3) reasons why they felt a contingency fee would adversely impact them.

Glynn Dec., ¶30.

**Response**

Admitted that SAI's e-mail of December 8, 2009, expressed concern, set out an explanation of

SAI's history with prior counsel, and explained why a contingency fee would adversely affect it,

but denies the remainder of Paragraph 30, including the claim that SAI did not object to CG's

proposed 22.5% contingency fee.  MM Mov. Dec. Exh. CC at 2-3 ("we do not agree with

adopting a contingency fee"); RM Mov. Dec. ¶ 48, Exh. M ¶ 8.

31.     Neither in their December 8, 2009 email, nor at any time thereafter, did Marc

Membreno, Robert Membreno or anyone else form SAI ever express an objection to the 22.5%

contingency fee. Glynn Dec., ¶32.

**Response**

Denied.  RM Mov. Dec. ¶¶ 23, 26, 48, Exh. M ¶ 8; MM Mov. Dec. ¶¶ 10-11, Exh. CC at 2-3,

Exh. DD at 2, 4-5.


32.     On December 8, 2009, Defendants admitted that "[o]n Ocotober 8th... we agreed

that in the interest of continuity, it was best you represent us through the upcoming appeals

process." Glynn Dec., ¶32, Exhibit I.

**Response**

Admitted that SAI wrote on December 8, 2009, that "we agreed that in the interest of continuity,

it was best you represent us through the upcoming appeals process", but denied that SAI wrote

that it "agreed" "[o]n October 8th".  SAI wrote that "On October 8th, you informed us of your

termination of employment with Nicoletti Hornig & Sweeney."  MM Mov. Dec. Exh. CC at 2.


33.     On December 8, 2009, Defendants admitted that "[i]f the case were to start now,

there may be some justification for acceptance of this [contingency] fee." Glynn Dec., Exhibit I.

**Response**

Admitted.


34.     On December 11, 2009, Defendants requested that the agreement be modified to

reflect a time basis. Glynn Dec., ¶34, Exhibit J.

**Response**

Admitted that on December 11, 2009, SAI wrote to CG that SAI would not accept a contingency fee arrangement, but denied as to the remainder of Paragraph 34, including that there was ever an "agreement" by SAI to retain CG on any basis other than on a time basis.  RM Mov. Dec. ¶¶ 17-18, 21-23, 26; MM Mov. Dec. ¶¶ 9-10, Exh. CC at 2-3, Exh. DD at 1-2, 4-5.

35.　　In this December 11, 2009 e-mail, Defendants stated:

> SAI Trust will honor Caruso Glynn's fees based on the hourly rate we agreed to, and will pay that fee out of a settlement or any court decision, whether positive or negative. For the settlement, Robert [Membreno] stated SAIT will pay all current invoices due, and agree to add a $10,000 performance bonus.

Glynn Dec., ¶35, Exhibit J.

**Response**

Admitted.

36.　　In response, on December 11, 2009, Plaintiff rejected Defendant's proposal but agreed to modify the terms of the engagement by accepting a blended rate which consisted of the following:

1) payment on a time basis at the rate of $320 per hour;

2) plus a contingency fee of 7.67%;

3) plus a $25,000 performance bonus;

4) plus any amount recovered from Calpine in excess of SAI's total damages to be treated as attorney's fees;

5) plus all invoices to be paid in full within 30 days.

Glynn Dec., ¶36, Exhibit K.

**Response**

Denied.  In reply to SAI's e-mail of December 11, 2009, annexed as Glynn J, CG stated that "I am quite dismayed by Robert's position but will nevertheless acquiesce and agree to remain on a time basis."  MM Mov. Dec. Exh. DD at 3.

37     In a second December 11, 2009 email in response, Defendants continued to cling to the untruth that they had sent a communication to Plaintiff choosing a time basis over contingency.  Therein, Marc Membreno wrote: "I too am looking for an email I sent regarding our going forward on a time basis." Glynn Dec., ¶37, Exhibit L.

**Response**

Admitted that an e-mail sent by Marc Membreño at approximately 5:41pm PST on December 11, 2009, included the sentence "I too am looking for the mail I sent regarding our going forward on a time basis", but denies the remainder as improper argument not in compliance with Local Rule 56.1(a) and otherwise unsupported by the evidence on which it purports to rely.  MM Mov. Dec. Exh. DD at 1.

38.     Defendants have produced no such e-mail because no such email exists. Glynn Dec., ¶38.

**Response**

Denied.  MM Mov. Dec. ¶¶ 7-8, Exh. AA, Exh. BB, Exh. EE at 3.

39.     In their second December 11, 2009 email, Defendants stated that they "have always insisted on a time basis for billing," but in this instance were unable to produce any documentation to demonstrate that they insisted on time billing when CG commenced its representation. Glynn Dec., ¶39.

**Response**

Admitted that on December 11, 2009, at 5:41pm PST, Marc Membreño wrote in part that:

> This is by no means the first (or probably be the last) time we will be defending our rights against parties who choose to ignore a contract. In all these cases, with all the various counsel we have employed, we have never agreed to a contingency basis for attorney's fees. We have always insisted on a time basis for billing. This was why I was confused with your contingency fee proposal, and asked you why Invoice No. 2 showed "no charge", because I assumed we had made it clear we would accept the increase in hourly rate.

MM Mov. Dec. Exh. DD at 2.  The remaining assertions in Paragraph 39 are denied as argument unrelated to the statement quoted and otherwise unsupported by the evidence on which they purport to rely.   MM Mov. Dec. ¶¶ 7-8, Exh. AA, Exh. BB, Exh. EE at 3.


40.     In their second December 11, 2009 email, Marc Membreno drafted the libelous statement that: "This is by no means the first (or probably be the last) time we will be defending our rights against parties who choose to ignore a contract." Glynn Dec., ¶40, Exhibit L.

**Response**

Admitted that on December 11, 2009, at 5:41pm PST, Marc Membreño wrote in part that "This is by no means the first (or probably be the last) time we will be defending our rights against parties who choose to ignore a contract", but denies the improper legal argument that said statement is libelous, in that it mentions no person who can claim to have been defamed and was

16

a statement of opinion about the future.  To the extent Mr. Glynn claims that the statement refers in any way to him, it is denied.  MM Mov. Dec. Exh. EE at 1-2.

41.     In a December 12, 2009 email, Plaintiff reiterated that the matter was being handled from the beginning on a contingency fee basis and that there was no objection from Defendants.  Glynn Dec., ¶40, Exhibit M.

**Response**

Denied; the plain language of Glynn Exhibit M does not support either counsel's declaration or the identical assertion in Paragraph 41.  Glynn Exh. M.

42.     Therein, Plaintiff further explained that for any modification of the fee agreement, SAI would have to pay $25,000.00. Glynn Dec., ¶42, Exhibit M.

**Response**

Admitted that CG sought on December 12, 2009, to extract a payment of $25,000 from SAI for exercising its rights at law to reject a contingency fee, but otherwise denies any additional assertions of Paragraph 42 of counsel's declaration and the identical Paragraph 42 of the Rule 56.1 Statement as unsupported by Glynn Exhibit M.

43.     From October 8, 2009 forward, Plaintiff diligently represented Defendants in their action against Calpine by performing thorough legal research and analysis of the myriad issues, drafting numerous status reports to both the client and the Court, exchanging numerous detailed email correspondence with Christopher Keegan, Esq. of Kirkland & Ellis, preparing exhaustive damage calculations, creating voluminous damage spreadsheets with multiple contingencies,

devising legal theories and arguments to be presented to Calpine and the Bankruptcy Court, handling the matter for further litigation in accordance with the Judge Marrero decision which called for the determination of damages in the Bankruptcy Court, and continuing to craft arguments that may be necessary in the event of further appeals. Glynn Dec., ¶43.

**Response**

Admitted that CG performed various tasks on behalf of SAI for which it was duly paid, including "legal research and analysis", "drafting numerous status reports to both client and the Court", engaging in "e-mail correspondence with Christopher Keegan, Esq., of Kirkland & Ellis", preparing "damages calculations" and "damage spreadsheets", but denies the remaining multiple assertions of Paragraph 43.  RM Mov. Dec. ¶¶ 31-38, Exh. G, Exh. H, Exh. I, Exh. J, Exh. K, Exh. L, Exh. N; MM Mov. Dec. ¶¶ 14-15, 17, Exh. FF, Exh. HH.


44.     To date, Defendants have never discharged Plaintiff. Glynn Dec., ¶44.

**Response**

Denied.  RM Mov. Dec. ¶¶ 37-39, Exh. L at 3, Exh. N; MM Mov. Dec. ¶ 22, Exh. JJ; RM Opp. Dec. ¶ 10.


45.     To date, Defendants can point to no termination notice, notice of change of attorney or substitution of counsel evidencing that CG was ever discharged as counsel for defendants. Glynn Dec., ¶45.

**Response**

Denied.  RM Mov. Dec. ¶¶ 37-39, Exh. L at 3, Exh. N; MM Mov. Dec. ¶ 22, Exh. JJ; RM Opp. Dec. ¶ 10.

46.     At no time between October 2009 and March 2010 did SAI ever discharge CG as counsel. Glynn Dec., ¶46.

**Response**

Denied.  RM Mov. Dec. ¶¶ 37-39, Exh. L at 3, Exh. N; MM Mov. Dec. ¶ 22, Exh. JJ; RM Opp. Dec. ¶ 10.

47.     Thereafter, in or about March 2010, SAI and Calpine settled the matter. A copy of an e-mail dated April 15, 2010 from Marc Membreno reporting to Plaintiff that the matter had been settled "after a long and arduous path," is annexed to the Glynn Dec. as Exhibit N. Glynn Dec., ¶47.

**Response**

Admitted.

48.     At the time of the settlement, Plaintiff was still counsel of record for SAI. Glynn Dec., ¶48.

**Response**

Denied.  RM Mov. Dec. ¶¶ 37-39, Exh. L at 3, Exh. N; MM Mov. Dec. ¶ 22, Exh. JJ.

49.     However, SAI and Membreno, in an attempt to prevent Plaintiff from recovering its rightful fee, consummated the settlement using new counsel, Campeau Goodsell. Glynn Dec., ¶49.

**Response**

Admitted that SAI and Robert Membreño "consummated the settlement" with Calpine through counsel, Campeau Goodsell Smith, but denies the remainder of Paragraph 49.  RM Mov. Dec. ¶¶ 37-39, Exh. N.

50.     The amount of the settlement between SAI and Calpine was $835,000.00 in cash and stock. Glynn Dec., Exhibit O. Glynn Dec., ¶50.

**Response**

Admitted that the amount of $835,000 appears in the settlement agreement, but denies the remainder.  RM Mov. Dec. ¶ 12; Glynn Moving Dec. Exh. O at 3.

51.     For this firm's efforts in litigating SAI's claims and enforcing the terms of the 1987 Agreement and bringing this matter to a settlement, Plaintiff is entitled to its reasonable attorney's fees of 22.5% of the settlement. Glynn Dec., ¶51.

**Response**

Denied as solely an improper legal conclusion to be decided by the Court.  (Antunes v. Putnam/Northern Westchester Bd. Of Co-op. Educ. Svcs., 2011 WL 1990872, at *2 n.9 (S.D.N.Y. 2011); Wojcik v. 42nd Street Dev. Project, Inc., 386 F. Supp. 2d 442, 448 n.5 (S.D.N.Y. 2005).  To the extent Paragraph 51 asserts any factual contentions, they are denied. RM Mov. Dec. ¶ 17-18, 21-22, 31-38, Exh. M, Exh. N; MM Mov. Dec. Exh. CC at 2-3, Exh. DD at 3-4, Exh. GG at 1.

52.     The settlement between SAI and Calpine consisted of the issuance of 48,863 shares in Calpine to SAI Trust valued at Calpine's closing share price on the date of execution of said agreement. [Glynn Dec., Exhibit O, §1(a)]; Glynn Dec., ¶52.

**Response**

Admitted.


53.     The agreement is signed by both parties, but undated. Glynn Dec., ¶53.

**Response**

Admitted.


54      The average share price for Calpine (stock symbol CPN) for the month of March 2010 was $11.53. Glynn Dec., ¶54.

**Response**

Denied as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements in Paragraph 54 of Mr. Glynn's moving declaration are lacking in foundation, are not based on personal knowledge, and constitute inadmissible hearsay.


55.     The cash component of the settlement between Calpine and SAI was thus $835,000 less 48,863 shares x $11.53 ($563,390.39) or $271,609.61. [Exhibit O §1(b)]; Glynn Dec., ¶55.

**Response**

Denied as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements at Paragraphs 54-55 of Mr. Glynn's moving declaration are lacking in foundation, are not based on personal knowledge, and constitute inadmissible hearsay.

56.    The share price of Calpine as of market's close on February 12, 2013, was $20.00. *See http://finance.yahoo.com/q?s=cpn&ql=1*, last visited on February 12, 2013; Glynn Dec., ¶56.

**Response**

Denied as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements at Paragraphs 54-56 of Mr. Glynn's moving declaration are lacking in relevance and foundation, are not based on personal knowledge, and constitute inadmissible hearsay.

57.    Accordingly, the settlement amount, valued as of February 11, 2013 is the aforementioned cash component of $271,609.61 plus 48,863 shares valued at $19.97 ($975,794.11) for a total of $1,247,403.72. Glynn Dec., ¶57.

**Response**

Denied as solely an improper legal conclusion to be decided by the Court.  (Antunes v. Putnam/Northern Westchester Bd. Of Co-op. Educ. Svcs., 2011 WL 1990872, at *2 n.9 (S.D.N.Y. 2011); Wojcik v. 42nd Street Dev. Project, Inc., 386 F. Supp. 2d 442, 448 n.5 (S.D.N.Y. 2005)), and as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements at Paragraphs 54-57 of Mr. Glynn's moving declaration are lacking in relevance and foundation, are not based on personal knowledge, and constitute inadmissible hearsay, and contain unsupported speculation and assumption (including that SAI did not

22

promptly liquidate the Calpine shares for disbursement of the full settlement proceeds to its beneficiaries).

58.    Plaintiff's reasonable attorney's fees, based upon this settlement amount, total $280,665.84. Glynn Dec., ¶58.

**Response**

Denied as solely an improper legal conclusion to be decided by the Court.  (Antunes v. Putnam/Northern Westchester Bd. Of Co-op. Educ. Svcs., 2011 WL 1990872, at *2 n.9 (S.D.N.Y. 2011); Wojcik v. 42nd Street Dev. Project, Inc., 386 F. Supp. 2d 442, 448 n.5 (S.D.N.Y. 2005) ), and as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements at Paragraphs 54-58 of Mr. Glynn's moving declaration are lacking in relevance and foundation, are not based on personal knowledge, and constitute inadmissible hearsay.  To the extent any assertions in Paragraph 58 are deemed proper and admissible factual assertions under Rule 56.1, they are denied.  RM Mov. Dec. ¶ 17-18, 21-22, 31-38, Exh. M, Exh. N; MM Mov. Dec. Exh. CC at 2-3, Exh. DD at 3-4.

59.    To date, SAI has failed to pay Plaintiff its reasonable attorney's fees. Glynn Dec., ¶59.

**Response**

Denied as solely an improper legal conclusion to be decided by the Court.  (Antunes v. Putnam/Northern Westchester Bd. Of Co-op. Educ. Svcs., 2011 WL 1990872, at *2 n.9 (S.D.N.Y. 2011); Wojcik v. 42nd Street Dev. Project, Inc., 386 F. Supp. 2d 442, 448 n.5

(S.D.N.Y. 2005).  To the extent Paragraph 59 asserts any factual contentions, they are denied.

MM Mov. Dec. ¶ 26, Exh. MM.


      60.     In light of the foregoing, Plaintiff has suffered damages in the amount of

$280,665.84. Glynn Dec., ¶60.

**Response**

Denied as solely an improper legal conclusion to be decided by the Court.  (Antunes v.

Putnam/Northern Westchester Bd. Of Co-op. Educ. Svcs., 2011 WL 1990872, at *2 n.9

(S.D.N.Y. 2011); Wojcik v. 42nd Street Dev. Project, Inc., 386 F. Supp. 2d 442, 448 n.5

(S.D.N.Y. 2005) ), and as unsupported by evidence in admissible form as required by Local Rule

56.1(c), as the statements at Paragraphs 54-60 of Mr. Glynn's moving declaration are lacking in

relevance and foundation, are not based on personal knowledge, and constitute inadmissible

hearsay.  To the extent any assertions in Paragraph 60 are deemed proper and admissible factual

assertions under Rule 56.1, they are deniedRM Mov. Dec. ¶¶ 46-47, 51, Exh. N; MM Mov. Dec.

¶¶ 26-27, Exh. MM.


      61.     Beginning in April 2001, Calpine began charging "allocated expenses" to the

monthly Net Profit Interest ("NPI") payments that were due and owing to SAI under a 1987

Agreement for Purchase and Sale of Asset ("the 1987 Agreement). Glynn Dec., ¶61.

**Response**

Admitted.

62.     By charging allocated expenses from other plants operated by Calpine, SAI's monthly NPI was effectively reduced. Glynn Dec., ¶62; Exhibit A.

**Response**

Admitted.


63.     In addition, in April 2001, Calpine began improperly charging 15% overhead to the monthly NPI. Glynn Dec., ¶63; Exhibit A.

**Response**

Admitted.


64.     These improper charges were the central issues to the litigation handled by CG. Glynn Dec., ¶64.

**Response**

Admitted.


65.     CG repeatedly threatened Calpine's counsel, Kirkland & Ellis, that any improper, post-Bankruptcy charges by Calpine to SAI's NPI, including for allocated expenses and 15% overhead, would be subject to suit. Glynn Dec., ¶65.

**Response**

Admitted.


66.     To date, Calpine has continued to make full payments to SAI for its monthly NPI. Glynn Dec., ¶66.

**Response**

Denied as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements in Paragraph 66 of Mr. Glynn's moving declaration are lacking in foundation, are not based on personal knowledge, and constitute inadmissible hearsay.

67.     CG is entitled to 22.5% of the difference in NPI payments attributable to Calpine's ceasing to charge allocated expenses and 15% overhead to NPI in futuro. Glynn Dec., ¶67.

**Response**

Denied as solely an improper legal conclusion to be decided by the Court.  (Antunes v. Putnam/Northern Westchester Bd. Of Co-op. Educ. Svcs., 2011 WL 1990872, at *2 n.9 (S.D.N.Y. 2011); Wojcik v. 42nd Street Dev. Project, Inc., 386 F. Supp. 2d 442, 448 n.5 (S.D.N.Y. 2005)), and as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements at Paragraphs 66-67 of Mr. Glynn's moving declaration are lacking in relevance and foundation, are not based on personal knowledge, and constitute inadmissible hearsay.

68.     The 1987 Agreement will end in May 2017. Glynn Dec., ¶68.

**Response**

Admitted.

69.     Lawrence C. Glynn, ("Glynn") is the sole member of CG and has been admitted to the practice of law in the States of New York and New Jersey since 1997. Glynn Dec., ¶69.

**Response**

Admitted.


70.     Glynn is also admitted to the United States District Courts for the Southern and Eastern Districts of New York, as well as the District of New Jersey. Glynn Dec., ¶70.

**Response**

Admitted.


71.     Glynn is also admitted to the United States Court of Appeals for the Second and Seventh Circuits. Glynn Dec., ¶71.

**Response**

Admitted.


72.     Glynn has litigated 290 cases in the United States District Court for the Southern District of New York alone.1 Glynn Dec., ¶72, Exhibit P.

**Response**

Admitted that Mr. Glynn was involved as counsel for 290 cases in the Southern District of New York but denies the remainder as unsupported by the documentary evidence on which Paragraph 72  purports to rely.


73.     In addition, Glynn has litigated hundreds of cases in the courts of the New York and New Jersey State Courts, Eastern District of New York, District of New Jersey, Eastern

District of Louisiana, Northern District of Indiana, Northern District of Illinois, Eastern District of Texas. Glynn Dec., ¶73.

**Response**

Admitted.

74.     Glynn has argued appeals in the United States Court of Appeals for the Second Circuit and Seventh Circuit, as well as in the First, Second and Third Departments of the New York State Appellate Divisions. Glynn Dec., ¶74.

**Response**

Admitted.

75      Glynn has a Bachelors of Science in Civil Engineering from Manhattan College with a minor in environmental science. Glynn Dec., ¶75.

**Response**

Admitted.

75. The docket for the case *In re: Calpine* contains over 8,000 entries. Glynn Dec., ¶75, Exhibit Q.

**Response**

Admitted.

76.     At the time of its filing in 2005, the Calpine bankruptcy was the eighth largest bankruptcy in U.S. history. Glynn Dec., ¶76, Exhibit R.

**Response**

Denied as unsupported by the documentary evidence on which Paragraph 76 purports to reply, and as unsupported by evidence in admissible form as required by Local Rule 56.1(c), as the statements in Paragraph 76 of Mr. Glynn's moving declaration are lacking in foundation, are not based on personal knowledge, and constitute inadmissible hearsay.


77.     As of 2008, the law firm of Kirkland & Ellis, counsel for Calpine, was ranked as the 7 largest firm the in the country, and the 11th largest firm in the world, by revenue. See http://www.top-law-schools.com/kirkland-ellis.html, last viewed on February 11, 2013. Glynn Dec., ¶77.

**Response**

Admitted.

Respectfully submitted,

Dated:  New York, New York
        March 12, 2013

HILL RIVKINS LLP
Attorneys for Defendants

By: _____
        John J. Sullivan
     45 Broadway – Suite 1500
      New York, New York 10006
      212-669-0600