UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CARUSO GLYNN, LLC,

                                        Case No.: 11 Civ. 4360 (VB)


                Plaintiff,


        -against-


SAI TRUST and ROBERT MEMBRENO,
Individually and as Trustee for SAI TRUST,


                Defendants.
------------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


### C A R U S O  G L Y N N, L L C
Pro Se

53-04 193rd STREET
FRESH MEADOWS, N.Y. 11365
TELEPHONE: (718) 570-3338
FACSIMILE: (718) 767-2474
e-mail to lglynn@carusoglynn.com
www.carusoglynn.com

# Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      Point I

           Based Upon the Unusual Circumstances of this Matter, CG is Entitled
           to 22.5% of the Settlement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

      Point II

           Plaintiff Has Successfully Overcome Each of Defendants' Spurious
           and Contradictory Positions Set Forth in Their Opposition Through
           Facts and Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      Point III

           Even if the Court Relies on *Quantum Meruit*, CG's Contingency Fee
           Must Still Be a Factor In Determining Reasonable Attorney's Fees. . . . . . . . . . . .  5

      Point IV

           CG Was Certainly Not Terminated For Cause. . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

      Point V

           Should the Court Apply the Lodestar Formula, the Contingency
           Adjustment Must Also Be Applied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

      Point VI

           Defendants Demonstrated an Inability or Unwillingness to Pay for
           Legal Fees In Full and Handling the Matter on a Contingency Fee
           Was Warranted.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      Point VII

           CG's Entitlement to 22.5% of That Portion of Future NPI Payments
           Attributable to Allocated Costs and 15% Overhead Charges Has Been
           Established. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

## Table of Authorities

**Cases**

*Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1078-79 (2d Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edison Stone Corp. v. 42nd Street,* 145 A.D.2d 249, 538 N.Y.S.2d 249 (1st Dept. 1989). . . . . . . 3

*Francis v. Atl. Infiniti, Ltd.*, 34 Misc. 3d 1221(A), 950 N.Y.S.2d 608 (Sup. Ct. 2012).  . . . . . . . . 9

*In re Krooks,* 257 N.Y. 329, 332–33, 178 N.E. 548 (1931).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*King v. Fox,* 7 N.Y.3d 181, 192, 818 N.Y.S.2d 833, 840-841,
851 N.E.2d 1184, 1191-1192 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*King v. Fox*, Case No. 97 Civ.4134(RWS), 2004 WL 68397 (S.D.N.Y. Jan. 14, 2004). . . . . . . . 2

*Milner v. City of New York*, 10 Civ. 9384 (JGK)(GWG),
2012 WL 3138110 (S.D.N.Y. Aug. 2, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2, 7

*Orient Overseas Container v. Crystal Cove Seafood*, Case No. 10 Civ. 3166
(PGG)(GWG), 2012 WL 6720615 (S.D.N.Y. Dec. 28, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Quinones v. Police Dep't of the City of N.Y.,* 2012 WL 2148171, at *8
(S.D.N.Y. Apr.12, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Raghavendra v. Trs. of Columbia Univ.,* 686 F.Supp.2d 332, 337 (S.D.N.Y.2010). . . . . . . . . . . 1

*Rooney v. Second Ave. R.R. Co.,* 18 N.Y. 368, 369 (1858). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 754
N.Y.S.2d 220 (1st Dept. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Smith v. Positive Productions*, 419 F.Supp.2d 437, 450 (S.D.N.Y. 2005).  . . . . . . . . . . . . . . . . . 4

*Sutton v. N.Y.C. Transit Auth.,* 462 F.3d 157, 161 (2d Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . 2

*Weg & Myers, P.C. v. 126 Mulberry St. Realty Corp.*, 453 F. App'x 90, 91 (2d Cir. 2011). . . . 5, 6

**Statutes**

N.Y. Gen. Oblig. L. § 15-501(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Point I**
**Based Upon the Unusual Circumstances of this Matter,**
**CG is Entitled to 22.5% of the Settlement**

Plaintiff, Caruso Glynn, LLC ("CG") demonstrated in its principle brief that it was never discharged, either for cause or otherwise. Defendants SAI Trust ("SAI") and Robert Membreno ("Membreno")(sometimes collectively referred to herein as "Defendants") rely exclusively on a February 5, 2010 e-mail that is the antithesis of "firing" or "terminating" or "discharging." Defendants have admitted that the matter was settled in March 2010. As CG was still counsel at the time of settlement and thereafter, it is entitled to a 22.5% portion of the settlement as opposed to calculating an award based upon number of hours worked.

In fact, this is the only possible outcome now that the Court has before it all of the relevant facts and legal arguments. In the select few cases dealing with this rare occurrence of an attorney being discharged *after* the settlement is consummated, the Court has routinely awarded the attorney a portion of the settlement instead of fees based upon an hourly basis. *See Milner v. City of New York*, 10 Civ. 9384 (JGK)(GWG), 2012 WL 3138110 (S.D.N.Y. Aug. 2, 2012) *report and recommendation adopted,* 10 Civ. 9384 JGK, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012). The insightful analysis set forth in *Milner* should be particularly helpful in guiding this Court to the proper resolution of this dispute. Therein, the Court held:

> Notably, in the two cases of which this Court is aware in which an attorney with a retainer agreement entitling him to a portion of the recovery was discharged after settlement, the court awarded a portion of the settlement amount rather than calculating an award based upon number of hours worked. *See, Quinones v. Police Dep't of the City of N.Y .,* 2012 WL 2148171, at *8 (S.D.N.Y. Apr.12, 2012) (finding a 40 percent contingency fee to be too high but awarding a one-third contingency fee where attorney was discharged after settlement was reached); *Raghavendra v. Trs. of Columbia Univ.,* 686 F.Supp.2d 332, 337 (S.D.N.Y.2010) (awarding full one-third contingency where attorney had produced a "substantial ... monetary benefit" through settlement), *rev'd in part on other grounds,* 434 F. App'x 31 (2d Cir.2011) (summary order); *cf. In re Krooks,* 257 N.Y. 329, 332–33, 178 N.E. 548 (1931) (**"[t]he client's right to control her retainer does not permit her to cheat her attorney"**) (implying that had the client's final monetary award been fixed, the attorney would have been entitled to collect under the terms of his retainer agreement). Accordingly,

a one-third contingency payment to Brown is appropriate and constitutes an equitable and fair result in this case. *See generally Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 754 N.Y.S.2d 220 (1ˢᵗ Dept. 2002) at 187–88 (**"[E]nforcement of a charging lien is founded upon the equitable notion that the proceeds of a settlement are ultimately 'under the control of the court, and the parties within its jurisdiction, [and the court] will see that no injustice is done to its own officers.' "**) (quoting *Rooney v. Second Ave. R.R. Co.,* 18 N.Y. 368, 369 (1858)) (alteration in original); *accord Sutton v. N.Y.C. Transit Auth.,* 462 F.3d 157, 161 (2d Cir.2006) ("A charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.' ") (citations omitted). Thus, Brown should receive a charging lien of one-third of the settlement recovery from the City, plus costs and disbursements.

*Id.*, emphasis added.

The facts of this case are on all four with *Milner* and each of the cases cited therein. CG was not terminated at the time of the settlement and is thus entitled to 22.5% of the settlement which has a current value of $1,265,483.03 and Plaintiff's reasonable attorney's fees, based upon this settlement amount, total $284,733.68. Glynn Reply Dec. ¶¶14-15.

### Point II
### Plaintiff Has Successfully Overcome Each of Defendants' Spurious and Contradictory Positions Set Forth in Their Opposition Through Facts and Law.

Defendants first claim that there was never any contingency fee agreement. But the engagement letter sent on October 8, 2009 establishes clearly that there was indeed a contingency. fee. It explained the scope of the employment and the terms of payment - 22.5% of the gross recovery plus out of pocket expenses to continue handling the matter which in October 2008 was, for all intents and purposes, beginning anew.[1] Defendants' made no effort for two months to repudiate the contingency fee agreement. "A party must act promptly to repudiate a contract or will be deemed to have elected to affirm it." *King v. Fox*, Case No. 97 Civ.4134(RWS), 2004 WL 68397

_____

[1]Any reference to arbitration under Part 137 of the Rules of the Chief Administrator was not applicable as the amount to be paid by the client would have either exceeded $50,000 or would have been zero.

2

(S.D.N.Y. Jan. 14, 2004) *citing Edison Stone Corp. v. 42nd Street,* 145 A.D.2d 249, 253, 538 N.Y.S.2d 249 (1st Dept. 1989). Hence, there does not appear to be any genuine disagreement of the fact that a contingency fee was the arrangement on October 8, 2009.

Defendants next argue that there was no contingency fee agreement because they "terminated it," albeit two months after the fact and without having actually terminated CG's representation. SAI overlooks that even if the Court accepts Defendants' interpretation of *King v. Fox*, 7 N.Y.3d 181, 192, 818 N.Y.S.2d 833, 840-841, 851 N.E.2d 1184, 1191-1192 (2006) and thus recognizes that the contingency fee can be terminated by the client without terminating the employment, the court can and must still consider the contingency fee agreement in determining *quantum meruit*. CG disputes that the client can unilaterally "terminate" a contingency fee after having first assented to it through two months of silence. Further, even if the Court is persuaded by Defendants' argument, "[t]he client' right to control her retainer does not permit her to cheat her attorney." *In re Krooks,* 257 N.Y. 329, 332–33, 178 N.E. 548 (1931). Importantly, CG has consistently argued that in this instance, the parties attempted to modify the fee arrangement subject to specific conditions, i.e., payment at the hourly rate of $320 per hour, a $25,000 performance bonus, and all invoices to be paid in full each month. SAI failed to satisfy the second and third conditions. Defendants never paid the $25,000 bonus[2] which was part of the consideration for the modification and defendants failed to pay invoices a) in full each month. any of these conditions. Defendants allege that the initial offer made was for $10,000 which was countered by CG with a demand for $25,000 and thus, their offer was rejected. However, that argument does not change the outcome. The modification still fails for lack of consideration. With respect to their failure to pay in full each month, Defendants put up absolutely

---

[2]Subsequently lowered by CG to $10,000 which also was not paid by Defendants. The amount originally offered by Defendants "for the settlement" was not for the settlement of the case as argued by Defendants, *it was for the settlement of the dispute over the contingency fee*. Defendants drafted these words and to the extent that there is any ambiguity, the rule of *contra proferentem* dictates that the term be construed against Defendants.

no defense to this claim in their opposition to this motion and even admitted this failure at the arbitration, stating:

> They didn't pay each invoice in a single amount. They would pay $2,000 here, $5,000 here. That is the way they made payments to Nicoletti and the way they kept making payments to Caruso Glynn.

See transcript attached to the Glynn Reply Dec. as Ex. B, p 32, lines 11-16.

> So they weren't paying - - the way they made their payments, they would send a rough amount. There would still be a balance outstanding on an hourly bill.

Glynn Reply Dec., Ex. B, p 33, lines 7-11

Having thus breached one of the conditions to any modification of the contingency fee agreement, a breach that Defendants have readily admitted under oath, CG was entitled to elect its remedies and seek recovery either under the original contingency fee agreement or the breached executory accord. "A party claiming breach of an executory accord can claim damages either for breach of the original agreement or for breach of the accord, but not for both. *Smith v. Positive Productions*, 419 F.Supp.2d 437, 450 (S.D.N.Y. 2005), *and see* N.Y. Gen. Oblig. L. § 15-501(3) ("if an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, [or] obligation ... which is the subject of the accord, or to assert his right under the accord"); *see also Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1078-79 (2d Cir.1993).

Defendants next contend that in any event, CG was discharged for cause due to SAI's perception that CG somehow misunderstood the nature of Calpine's settlement proposal. Plaintiff argues convincingly that 1) it was never discharged and 2) was not discharged for cause. With respect to the first argument, Defendants only basis for its contention (that CG was discharged) is a February 5, 2010 e-mail which instructs "from this day forward, SAI Trust will not authorize

payments for services rendered by Caruso Glynn without prior approval of hours to be billed, and

specific activity to be conducted.... Caruso Glynn are to cease communications with Calpine counsel

unless authorized by SAI Trust, nor conduct any further analysis of legal matters pertaining to the

case." See M. Membreno Dec., Ex. JJ. Read in an objective, reasonable manner, this is the opposite

of a termination.[3]

### Point III
### Even if the Court Relies on *Quantum Meruit*, CG's Contingency Fee
### Must Still Be a Factor In Determining Reasonable Attorney's Fees

Importantly, as mentioned above, even if the Court were to accept all of Defendants'

arguments thus far, it would still have to consider CG's contingency fee in determining the *quantum*

*meruit* value of CG's services. *Weg & Myers, P.C. v. 126 Mulberry St. Realty Corp.*, 453 F. App'x

90, 91 (2d Cir. 2011) is instructive on this point, not necessarily for what it says, but for what it does

not say. While the Second Circuit did affirm the district court's rejection of using the contingency

fee, the Second Circuit *did not* hold that an attorney's claims for a fee based on a percentage of the

recovery *can not* be considered. This is an important distinction. The Second Circuit did not infringe

on the discretion of the district court judge which, in that particular case, declined to use the

contingency fee in calculating *quantum meruit*. Implicit in this holding is that the Second Circuit

would also not interfere with a district court's discretion in taking into account the contingency fee

to calculate *quantum meruit*. This important distinction was recently noted in *Orient Overseas*

*Container v. Crystal Cove Seafood*, Case No. 10 Civ. 3166 (PGG)(GWG), 2012 WL 6720615

(S.D.N.Y. Dec. 28, 2012) which held:

---

[3]Attributing the fairest interpretation possible, this instruction was that CG was free to keep working on Defendants' case, CG just couldn't bill for that work "without prior approval of hours to be billed." This e-mail does not say "your fired." It does not say "we will be turning this matter over to new counsel." It does not say "we will handle this matter on our own going forward." It does not say "don't call or email us to discuss this case." It does not say "if the Court schedules a conference, you are not to attend." It does not say that if a letter is received from Calpine "you are not to read it or respond in any fashion."  And it does not say "please return our file." There simply is no way any reasonable reader of this e-mail can infer that CG was being terminated.

*Weg & Myers, P.C.* simply affirmed the district court's decision to calculate reasonable fees according to the lodestar method rather than taking into account the contingency fee arrangement that the client and attorney agreed would control their relationship. *Id.* at 92. *Weg & Myers, P.C.* does not stand for the proposition that an attorney may not be granted fees above a rate that the client agreed to pay. Indeed, case law notes that "[t]he appropriate measure is the market rate for [the attorney's] services by clients who can afford them, not [the] client's perceived ability to pay. Otherwise *pro bono* attorneys could never recover fees." *Williams v. Sec'y of Navy,* 853 F.Supp. 66, 71 (E.D.N.Y.1994) (citing *Wilder v. Bernstein,* 725 F.Supp. 1324, 1334 (S.D.N.Y.1989)).

*Overseas Container v. Crystal Cove Seafood*, Case No. 10 Civ. 3166 (PGG)(GWG), 2012 WL 6720615 at *9 (S.D.N.Y. Dec. 28, 2012)). With this more insightful reading of the *Weg & Meyers* decision, even if the Court were to determine that Plaintiff is only entitled to *quantum meruit*, it is still properly within this Court's discretion to use CG's contingency fee in making that determination.

**Point IV**
**CG Was Certainly Not Terminated For Cause**

Which leaves Defendants with their "last ditch" defense, *to wit*, that CG's "discharge" was "for cause." Defendants have spent an exhaustive amount of time arguing that CG misunderstood the nature of Calpine's settlement proposal and that it was for this reason that SAI lost confidence in CG and that SAI had to fire CG because CG had botched the case so badly, etc. At no point have Defendants submitted the Calpine Sixth Amended Plan of Reorganization (upon which their entire argument is based) nor have they actually cited to a specific section of said plan to demonstrate exactly how and why CG's interpretation was incorrect and Calpine's was correct. Even had Defendants set forth the plan in either their principle motion or in opposition, CG contends that its interpretation of the Plan was correct and that insisting on an all cash settlement which included the contingency fee was the most effective strategy in dealing with Calpine. CG further contends that Calpine's interpretation of the Plan was 1) incorrect and 2) pure posturing. Yet despite CG's explanation to SAI of Calpine's seeming duplicity, SAI at some point began to actually trust

Calpine's opinion as to interpretation and settlement strategy over CG's. Nevertheless, dissatisfaction with reasonable legal choices and a difference of opinion concerning strategy do not constitute a "for cause" discharge. *See Milner v. City of New York*, 10 Civ. 9384 (JGK)(GWG), 2012 WL 3138110 (S.D.N.Y. Aug. 2, 2012) *report and recommendation adopted,* 10 Civ. 9384 JGK, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012), citations omitted.

Defendants have provided no critical analysis of the issues nor any actual evidence of a perceived misconception on the part of CG. Nor have Defendants explained why, in February 2010, they decided that they were going to take legal advice from their adversary Calpine, the defendant that put them through five years of litigation and nine years of improperly withholding royalty payments. Putting aside the peculiarity of these arguments, to the extent that the Court actually gives credence to Defendants' faux argument that there was a "termination," then the actual reason for SAI's decision to "terminate"[4] had absolutely nothing to do with any misunderstanding of SAI's status as a general unsecured creditor and its impact on a potential settlement with Calpine. In fact, the actual reason that CG was "terminated," at least according to Robert Membreno, was due to Mr. Membreno's desire to protect the interests of Calpine and "his trustees." Mr. Membreno admitted as much under oath, stating:

> So, I was very much concerned that even though we had, with Calpine, a disagreement on the issues, I would never take advantage of the position granted to us in obtaining the attorney's fees. I would not increase it except for the fact that we, you know, had negotiated the fee structure as adequately as we had.
>
> I had a fiduciary responsibility to my trustees, my other trustees and also I felt I had a responsibility to Calpine to make sure that the costs would not be excessive. I mean, that has been my practice and that is why I think I was very successful.
>
> So, therefore, the issue of the contingency fee and adding on to a fee above the amount was automatically contrary to my position. **And that is why I immediately told Mr. Caruso not to continue providing services because he increased the fees**

---

[4]CG still denies there was ANY termination.

7

> **to Calpine without even our authorization. And that is why we went back to California's attorneys.**

See Transcript of Hearing annexed as Exhibit B to the Reply Declaration of Lawrence C. Glynn ("Glynn Reply Dec.") at p 72, lines 3-25.

Membreno, testifying under oath, claims that the "termination" of CG was over "increasing the fees to Calpine without... authorization." There was no mention of any misunderstanding of the settlement proposal or any dissection of the Plan's definition of an unsecured creditor and the resulting implications of said status vis-à-vis settlement, or the issuance of post-discharge shares of "New Calpine" or the share price to be used in issuing shares in lieu of cash for the settlement. Membreno's silence is convincing evidence that all of these desperate allegations from Defendants are purely pretext.

Also, Membreno claims that "the issue of the contingency fee and adding on to a fee above the amount was automatically contrary to my position." Glynn Reply Dec., Ex. B, p 72, lines 19-22. To what position Mr. Membreno was referring is anyone's guess and certainly isn't stated in any of the dozens of e-mails that are now a part of the record. It certainly isn't stated in the numerous declarations submitted by Defendants. In fact, a review of the complete record now before the Court reveals that Defendants' "position" was extremely fluid to say the least. Membreno continues:

> And that is why I immediately told Mr. Caruso not to continue providing services because he increased the fees to Calpine.

Id at lines 22-25.

Having now proffered so many different and ever changing "reasons" for "terminating" CG, the Court must rightfully disregard all of them as mere pretext, going not only to the basis for any termination, but to the threshold issue of whether there was ever a termination in the first place.

### Point V

### Should the Court Apply the Lodestar Formula, the Contingency Adjustment Must Also Be Applied

8

In the event that the Court does calculate Plaintiff's entitlement to fees exclusively applying the Lodestar formula, then Plaintiff's fees of $320 per hour are reasonable for attorneys practicing in Queens County with, at the time, 12 years of experience. *See Francis v. Atl. Infiniti, Ltd.*, 34 Misc. 3d 1221(A), 950 N.Y.S.2d 608 (Sup. Ct. 2012). Plaintiff's time sheets (Declaration of Robert Membreno "RM Dec."), Exs. G-L and Glynn Reply Dec., Ex. C) demonstrate a total of 95.5 hours[5] at $320 per hour yielding the amount of $30,560.00 plus $149.00 in disbursements. A summary of hours billed is as follows:

| Period | Hours | Rate | Total |
|--------|-------|------|-------|
| Oct 2009 | 8.1 | 320.00 | 2592 |
| Nov 2009 | 13.3 | 320.00 | 4256 |
| Dec 2009 | 35.3 | 320.00 | 11296 |
| Jan 2010 | 24.0 | 320.00 | 7680 |
| Feb 2010 | 14.8 | 320.00 | 4736 |
| **Total** | **95.5** | | **30560** |

To the extent that the Court finds that the parties reached an agreement to modify the contingency fee, CG demanded in addition to the hourly billing a $25,000 performance bonus which was lowered to $10,000, as part of the consideration for modifying the contingency fee, bringing the total amount to $40,709.00. Defendants have admitted to making total payments of only $32,885.16, leaving a shortfall in the amount of $7,823.84.

Further, in applying the lodestar formula, the Court *must* also factor in a contingency adjustment. "The contingency adjustment is a percentage increase in the lodestar fee to reflect the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained." *Id.* Here, the record is replete with the substantial risk undertaken by CG in handling the matter on a "no cure, no

---

[5] Defendants were already credited for all time billed in September 2009 through October 7, 2009. See RM Dec., Exs. G-L, Glynn Reply Dec. Exs. C and E. These hours are not included in the total.

pay" basis. At the point in time when CG commenced handling this matter, the action was entering into a whole new phase. It was destined for the Second Circuit. Had the Second Circuit reversed Judge Marrero's decision, the case would have been over. Calpine would have won and SAI and Membreno would have received nothing. And CG also would have received nothing which is the way contingency works. CG was willing to take that risk.

### Point VI

### Defendants Demonstrated an Inability or Unwillingness to Pay for Legal Fees In Full and Handling the Matter on a Contingency Fee Was Warranted

SAI's Exhibit N Demonstrates CG's legitimate concerns regarding substantial unpaid balances. According to the March 19, 2009 Statement, during the period that the matter was handled by the Nicoletti firm, SAI made a payment of only $5,000 on a $27,400.62 outstanding Invoice. With this background, at the commencement of the attorney-client relationship with CG, or as soon thereafter as practical, CG had a justified basis for handling the matter on a contingency fee. Membreno Ex. N shows $27k in unpaid invoices after 60 days, and their own counsel admitted under oath at the underlying arbitration that SAI pays "$2,500 here and $5,000 there." Glynn Reply Dec., Ex. B, p 32, lines 11-16.

### Point VII
### CG's Entitlement to 22.5% of That Portion of Future NPI Payments
### Attributable to Allocated Costs and 15% Overhead Charges Has Been Established

With respect to the valuable change in tack by Calpine, who ceased deduction from monthly NPI payments for allocated expenses attributable to its consolidated operations and the unauthorized charge of 15% of overhead, and the valuable audit rights of the 1987 agreement which were effectively enforced through CG's efforts, to the extent Calpine has resumed paying the full amount of the monthly NPI, such action was a direct result of the threats and efforts made by CG that further deductions to NPI would subject Calpine to a separate lawsuit(s). Importantly, Defendants concede this point:

65.     CG repeatedly threatened Calpine's counsel, Kirkland & Ellis, that any improper, post-Bankruptcy charges by Calpine to SAI's NPI, including for allocated expenses and 15% overhead, would be subject to suit. Glynn Dec., ¶65.

Response:
Admitted.

See Defendants Counter-Statement to Plaintiff's Local Rule 56.1 Statement ("Def. L.R. 56.1

Counterstatement") at ¶65. Further, Defendants admit that the issue of future unwarranted deductions

from NPI was central to CG's representation of Defendants:

64.     These improper charges were the central issues to the litigation handled by CG. Glynn Dec., ¶64.

Response:
Admitted.

Id. at ¶64. Accordingly, Plaintiff must be granted summary judgment on its claim for 22.5% of that

portion of NPI payments which had been previously improperly deducted by Calpine for allocated

expenses and 15% of overhead for its consolidated operations, which SAI now receives in full each

month and has received in full from October 2009 continuing through May 2017 when their

Agreement with Calpine expires.

Dated: New York, New York
       March 22, 2013


                              Respectfully submitted,

                              **Caruso Glynn, llc**
                              Attorneys for Plaintiff


                              By:   /s/ *Lawrence C. Glynn*
                              Lawrence C. Glynn (LG-6431)
                              53-04 193rd Street
                              Fresh Meadows, N.Y. 10035
                              (718) 570-3338
                              File No.: 88.071108.01

11