# Lawrence Glynn

| | |
|---|---|
| **From:** | Lawrence Glynn <lglynn@carusoglynn.com> |
| **Sent:** | Thursday, April 15, 2010 2:57 PM |
| **To:** | 'MGM9@aol.com' |
| **Cc:** | 'skipperrjm@yahoo.com' |
| **Subject:** | RE: Caruso Glynn Invoice No. 1 |
| **Importance:** | High |

No Marc, it is very material in any dispute I may ultimately have with Mr. Nicoletti over who is owed what. You paid the Nicoletti firm for services that were performed exclusively, 100% by the undersigned. He technically has no right whatsoever to anything. You technically should be paying me $6,752.00 on top of $24,840.00. I am quite generously and patiently allowing this to all be resolved by taking a fairly sizeable hit.

Second, that agreement you made on December 11 was in no way limited in time or scope. That was an agreement for how outstanding invoices were to be paid.

Gentlemen, please immediately advise if you are going to pay my invoices or not so that I may consider my next step.

Very truly yours,

Lawrence C. Glynn

## Caruso Glynn, LLC

53-04 193rd Street
Fresh Meadows, New York 11365
(718) 570-3338
(718) 767-2474 (fax)
lglynn@carusoglynn.com
www.carusoglynn.com
twitter @CargoLaw

**From:** MGM9@aol.com [mailto:MGM9@aol.com]
**Sent:** Thursday, April 15, 2010 2:48 PM
**To:** lglynn@carusoglynn.com
**Cc:** skipperrjm@yahoo.com
**Subject:** Re: Caruso Glynn Invoice No. 1

Larry,

It is immaterial whether you call yourself an "independent contractor", or whether or not you choose to call yourself an employee of the firm. The fact is we paid *Nicoletti Hornig and Sweeney for services rendered* in the Calpine case up to the first week of October, 2009.

Please note, the December 12 email you referred to is in regards the outstanding balance that was paid in full on January 5th of 2010. This comprised invoices 1, 2 and 3.

Marc

1

In a message dated 4/15/2010 11:06:15 A.M. Pacific Daylight Time, lglynn@carusoglynn.com writes:

Marc,

As I agreed over the phone moments ago, I will credit SAI an additional $1,604.00. For the record, I was not "in the employ of Nicoletti Hornig & Sweeney" since November 2008 at which time I resigned and then stayed on as "of counsel" to that firm. Thus, from November 2008 until my final departure in October 2009, I was an independent contractor and NOT in the employ of Nicoletti Hornig & Sweeney.

Accordingly, please now immediately remit the amount of **$24,870.00** which is the amount outstanding ($26,474.00) less an additional credit of $1,604.00.

Please also note that on December 11, 2009, you agreed to pay all outstanding invoices within 30 days. You wrote, and I quote "**I understand about being a small firm with outstanding balances, we will make payment for all outstanding invoices to Caruso Glynn as you have requested.**" These invoices are now more than 90 days old. Thus, I must insist that you kindly wire funds immediately. Our bank details are as follows:

**Bank Name:**
HSBC Bank
110 William Street
New York, NY 10038
Contact: Barry Stockman (212) 809-4401

**Account Name:**
Caruso Glynn, LLC
Account Number: 641752385
ABA No. 021001088
SWFT CODE-MRMDUS-33RTL

Very truly yours,

Lawrence C. Glynn

**Caruso Glynn, LLC**

53-04 193rd Street

2

Fresh Meadows, New York 11365

(718) 570-3338

(718) 767-2474 (fax)

lglynn@carusoglynn.com

www.carusoglynn.com

twitter @CargoLaw


**From:** MGM9@aol.com [mailto:MGM9@aol.com]
**Sent:** Thursday, April 15, 2010 1:34 PM
**To:** lglynn@carusoglynn.com
**Cc:** skipperrjm@yahoo.com
**Subject:** Caruso Glynn Invoice No. 1


Larry,


After a long and arduous path, we have reached an agreement with Calpine on the issue of unauthorized allocated costs for the West Ford Flat power plant. We are in the process of reconciling attorney's fees and administrative costs related to the case prior to distribution of proceeds to the SAI Trust beneficiaries.


On October 8th, 2009, you informed us by email that you were terminating your employment with Nicoletti Hornig and Sweeney. You further requested us to make payment on a Caruso Glynn (your newly created firm) invoice dated October 8th 2009 that comprised services from September 1st 2009 to September 22nd 2009. The invoice amount was $6,752.00 and showed an increase in the hourly rate from $260.00 to $320.00 (your new firm's hourly fee). The total hours were 21.1 hours. The invoice was paid along with the balances of invoices 2 and 3 on January 5, 2010 by SAI Trust.


On January 19th 2010, we informed you by email that your previous employer, Nicoletti Hornig and Sweeney had sent a "final" invoice (SAI Trust v Calpine Corp. – Federal Civ No.: 05-60200, File #: 00000840, Inv #: 23070) for $5,148.00 for professional services rendered and disbursements incurred from September 1, 2009 to January 7, 2010. The time sheet attached to this invoice shows billing activity and descriptions of professional services from September 1st 2009 to October 5th 2009. Your response to this email was that "Mr. Nicoletti had no basis for charging you for these hours whatsoever". You then advised us to pay his invoice in full and deduct the corresponding amount from your invoices "to avoid any further unpleasantness".

The invoices from Caruso Glynn and from Nicoletti Hornig and Sweeney show exactly the same description of services, and same dates when the work was done, but your invoice shows 21.1 hours whereas Nicoletti's has 18.5 hours. Nine time entries show incremental increases from the Nicoletti invoice. We have contacted Nicoletti Hornig and Sweeney to ascertain whether you had an understanding with respect to billing the work for your own firm when you were still under the employ of Nicolletti. They have responded that no such understanding existed, therefore, the Caruso Glyn Invoice No. 1 for $6,752.00 will be credited back to SAI Trust; one, because this was work done when you were under the employ of Nicoletti and two, because you retroactively increased the hourly rate for work Nicoletti Hornig and Sweeney had already done. Forthcoming payments to Caruso Glynn on outstanding invoices will be adjusted accordingly.

Marc Membreño for Robert Membreño

SAI TRUST


Attached document: Nicoletti, Hornig & Sweeney Invoice 23070

| | |
|---|---|
| 1 | Proceedings |
| 2 | have been in the consulting |
| 3 | business -- I am an engineer and been |
| 4 | in the consulting business for many, |
| 5 | many years and, therefore, involved in |
| 6 | litigations of various types from time |
| 7 | to time. |
| 8 | My firm was very successful in |
| 9 | the consulting business and we hold |
| 10 | very high ethical values as important |
| 11 | to our profession. As a matter of |
| 12 | fact, as a consultant we have to rely |
| 13 | on those values, those ethical values |
| 14 | to maintain and grow a firm in that |
| 15 | business. |
| 16 | So we are very clear when we |
| 17 | negotiate an agreement with anybody, |
| 18 | including attorneys. And under no |
| 19 | circumstances in any of the legal |
| 20 | operations with other attorneys we |
| 21 | have had contingency fees. Always |
| 22 | took the risks involved in defending |
| 23 | our positions because, quite frankly, |
| 24 | I felt, in directing my company, that |
| 25 | we would always be honest and ethical |